This case involves an interlocutory appeal by the Marion County Prosecutor pursuant to R.C. 2501.02 and R.C. 2744.02(C). On September 24, 1999, this court properly dismissed this appeal on the authority of the decision of the Supreme Court of Ohio in State ex rel.Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451
. See Thomas Vending, Inc. v. Slagle (September 24, 1999), Marion App. No. 9-99-16, unreported at *3. As we stated in our judgment entry of dismissal, both R.C. 2501.02 and R.C. 2744.02(C) were amended, effective January 27, 1997 as part of Am.Sub.H.B. No. 350 to allow appellate courts to hear interlocutory appeals from orders denying a political subdivision or an employee thereof the benefit of an alleged immunity. See id. at 2-3. However, in Sheward the Ohio Supreme Court expressly declared Am.Sub.H.B. No. 350 unconstitutional in toto because inter alia, it violates the one subject provision of Section 15(D), Article II of the Ohio Constitution. See Sheward, 86 Ohio St.3d 451 at paragraph three of the syllabus. As a result, we found the foregoing Revised Code sections were now void pursuant to Sheward, and accordingly dismissed the appeal. See Thomas Vending, Inc., Marion App. No. 9-99-16, at *3.
Subsequently, on motion of the appellant, a majority of this court granted reconsideration of our September 24, 1999 dismissal and now renders a decision which recognizes the continuing viability of R.C. 2744.02 even while construing its operation as precluding appellant's current appeal. In its new decision, the majority expressly adopts the theory advanced by appellant that R.C. 2744.02(C) and a number of other Revised Code Sections perhaps thought by the Ohio Supreme Court and others to be part of Am.Sub.H.B. 350, are, in fact, totally unaffected by the Sheward
decision because prior to Sheward, these sections of the Revised Code were amended in a separate act, Am.Sub.H.B. 215, are thus no longer part of Am.Sub.H.B. 350, and thereby evade any violation of the one subject provision of the Ohio Constitution contained in H.B. 350. See Am.Sub.H.B. 215, Section 1, 147 Ohio Laws ___, reprinted in Page's Ohio Rev. Code Ann. 1997 Bulletin #7 491-91(amending R.C. 2744.03(A)(6), eff. 06-30-97).
On this rationale, it appears that over one-fifth (some 22 of 99) of the total number of Revised Code Sections addressed by the Ohio Supreme Court as part of H.B. 350 in Sheward, having been amended in similar fashion, are now to be construed as entirely outside the scope of and unaffected by that decision, certainly insofar as the one subject rule is concerned and arguably for any purpose. For example, in addition to the Revised Code Section at issue in our case involving interlocutory appeals by public officials, other sections of considerable public interest once part of Am.Sub.H.B. 350 but subsequently amended in some fashion and hence to be construed as unaffected by the Sheward decision would include R.C. 2317.45, which abrogates the common-law collateral source rule and requires a jury to consider collateral benefits when calculating compensatory tort damages, and R.C. 4513.26.3(F), which requires the trier of fact to consider the failure to wear a seat belt evidence of contributory negligence.[1]
It is important to note that the rationale adopted by the majority today also advances a judicial construction of legislative action in which the terms "amend," "enact," and "re-enact" are identical, interchangeable and carry the same specific legislative intent to enact new legislation in compliance with the one subject rule. Appellant's application for reconsideration is itself, in my view, rather misleading on this point. Quite simply, the application purports to quote Am.Sub.H.B. 215 so as to imply that the legislative intent was that relevant sections of R.C. Chapter 2744 "be amended and that new sections of the Revised Code be enacted" as though the entire sentence was referring to R.C. Chapter 2744 when in fact, the relevant sections of R.C. Chapter 2744 were to be amended only and additional revised code sections, omitted from the quote by appellant, were to be enacted. See Appellant's Memorandum in Support of Application for Reconsideration, at *3. In short, the legislature was clearly using the terms "amend" and "enact" separately in this passage with regard to totally different code sections and not together in reference to R.C. Chapter 2744.
In our case, for example, the version of R.C. 2744.02
originally found in Am.Sub.H.B. 350 was amended in Am.Sub.H.B. 215 to the extent of changing approximately four words in a single subsection, although the entire text of the statute was restated
in the new bill. Apparently, the majority believes that restating
the text of R.C. 2744.02 in the amending bill Am.Sub.H.B. 215 constitutes an intentional re-enactment of the entire statute by the legislature sufficient to avoid the implications of the one-subject rule addressed in the Sheward decision with regard to Am.Sub.H.B. 350.
No doubt the Ohio Supreme Court and others, will find the foregoing reduction of the Sheward decision by a majority of this Court interesting. However, because I am not convinced the rationale underlying our reconsideration of this case is sound and because I do not agree with the purported application of R.C.2744.02 to the merits of this appeal by the majority, I respectfully dissent.
As the majority indicates, defendant is the prosecutor of Marion County. He is also the statutory legal adviser to the Marion County Sheriff and the Marion County Commissioners. See R.C. 309.09(A). The plaintiff is a vending company that provided snack and soft drink machines to both the city of Marion and Marion County.
In his capacity as prosecutor, defendant was involved in the preparation of several search warrants by which gambling machines belonging to the plaintiff were seized. He also sent a letter to the County Commissioners and suggested that any vending arrangements the County maintained with the plaintiff should be terminated based on public policy. Acting "on the advise [sic] of our Prosecuting Attorney (legal counsel)," (Letter to plaintiff from Marion County Commissioners dated January 4, 1995, quoted in plaintiff's brief, at *3), the Marion County Commissioners terminated the County's vending arrangements with the plaintiff. According to the plaintiff, the defendant's action in sending this letter constitutes interference with its business relationship with Marion County.
Subsequently, the City of Marion also terminated its contracts with plaintiff. The City's law director later averred that neither the defendant "nor any other representative of the Marion County Prosecutor's Office contacted me directly or indirectly to request that [plaintiff] remove their vending machines." However, the plaintiff alleges that this must be a lie, because according to other witnesses the City's law director could not have seen the police reports he claims to have relied upon in his decision to terminate the contracts. Based on this dispute over access to police reports, the plaintiff argues that the only possible conclusion is that the defendant must have requested the City to terminate its contracts with the plaintiff.
Solely based on the foregoing evidence, the plaintiff alleges that the defendant tortiously interfered with its business relationships with the City and the County. The trial judge denied defendant's motion for summary judgment, allegedly based on "material issues of fact with respect as to whether sovereign immunity exists." The trial court's decision ostensibly rested upon the reasoning, apparently adopted by the majority, that the foregoing evidence and the timing of the return of some of the seized property creates a factual dispute as to whether the defendant acted "manifestly outside the scope of [his] * * * employment of official responsibilities," R.C. 2744.03(6)(a), or "with malicious purpose, in bad faith, or in a wanton or reckless manner," R.C. 2744.03(6)(b).
The trial court's decision is incorrect in virtually every way. First, it overlooks the fact that the defendant is the statutory legal adviser to Marion County, and in that agency capacity he is a party to the County's business relationships. He cannot be sued for interference with this business relationship because he is a party to the relationship. See Garg v.Venkataraman (1988), 54 Ohio App.3d 171, 174. Therefore, insofar as plaintiff's cause of action deals with Marion County, it has failed to state a valid claim for relief.
Moreover, while the R.C. 2744.03(6) exceptions result in a forfeiture of immunity in many cases, the trial court's analysis completely overlooks R.C. 2744.03(A)(7).
 The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code.
(emphasis added).
Prosecutors are protected by the same common-law immunity as judges. See, e.g. Bertram v. Richards (1974), 49 Ohio App.2d 3, 4.
 However, if the prosecuting attorney stops acting in a quasi-judicial capacity and begins functioning as a policeman, he loses that immunity. * * * * As long as the prosecuting attorney maintains his role of observer or advisor, he will not lose that immunity[.]
Id. at 5 (citations omitted, emphasis added). The legislature preserved this common law immunity in addition to the normal qualified immunity granted to employees of political subdivisions. See R.C. 2744.03(A)(6). Defendant's letter to the commissioners was dated November 22, 1995 — prior to the execution of the sea-rch warrant and, as the majority correctly observes, "during the [criminal] investigation into Appellee's business practices." Majority opinion, ante at *2 (emphasis added). While no charges were brought as a result of that investigation, defendant was clearly acting in his capacity as a prosecutor and as statutory legal advisor to Marion County. The trial court's decision was predicated upon the idea that defendant could lose his immunity if he acted within one of the exceptions enunciated in R.C.2744.03(A)(6). However, the defendant had common law immunity from suit under R.C. 2744.03(A)(7),[2] even if his actions fall under one of the exceptions from qualified immunity announced in R.C. 2744.03(A)(6).[3]
 In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.] (emphasis added).
Finally, even if we are to assume that defendant's absolute prosecutorial immunity does not apply, he is still entitled to a qualified immunity under R.C. 2744.03(A)(6), because as a matter of law, the scant evidence cited by plaintiff cannot establish either that the defendant's acts "were manifestly outside the scope" of his official responsibilities or were wanton, reckless, malicious or in bad faith. Defendant's letter to his statutory clients, even if it may be outside the scope of his representation (and I do not believe it is) is not manifestly so, and plaintiff can cite no evidence the advice given was wanton, malicious, reckless or in bad faith. Likewise, plaintiff has no evidence permitting the inference that defendant even discussed this issue with the Marion city law director, and thus clearly cannot infer that alleged discussion to be wanton, reckless, malicious, or in bad faith. Cf. e.g. Titanium Ind. V. S.E.A., Inc. (1997),118 Ohio App.3d 39, 49-50 (recognizing that Ohio rejects inferences based solely upon inferences).
Finally, the trial court's order also erroneously purports to deny summary judgment "on the failure to return the property claim[.]" Decision on Defendants [sic] Motion for Summary Judgment, at *4. Even assuming that such a tort exits and that R.C. 2933.41 imposes a statutory duty on the defendant, who is clearly not a "law enforcement agency," cf. Globe Amer. Cas. Co.v. Cleveland (1994), 99 Ohio App.3d 674, 678, the plaintiff in this case filed an amended complaint on November 17, 1997 that abandoned that claim altogether.
For the foregoing reasons, defendant is clearly entitled to judgment as a matter of law based on immunity. In my view, the majority has erroneously declined to address the merits of immunity, simply because the trial court obliquely refers to a factual dispute which a cursory examination reveals to be entirely specious and irrelevant to the law governing the disposition of this case.
Essentially, the majority argues that there is a distinction between an order determining immunity does not exist as a matter of law, and an order holding that there is a disputed question of fact that prevents the court from determining whether immunity exists. However, I believe this is a false distinction which inevitably undermines the substantive application of the immunity law. There are always both factual and legal disputes involved with immunity determinations, because the question is always whether immunity exists on any given state of facts.
Immunity determinations are therefore always mixed questions of law and fact.[4] Cf. Roe v. Hamilton Cty. Dept. of Hum. Serv.
(1988), 53 Ohio App.3d 120, 126. Thus, even though whether immunity exists may be a fact-driven inquiry, it is a determination to be made by the judge, not a question for determination by the factfinder. Moreover, the immunity question is properly decided prior to trial. See id; Linley v. DeMoss
(1992), 83 Ohio App.3d 594, 599.
Finally, I disagree with the majority's holding that to be immediately appealable a trial court order must deny the existence
of an immunity. The statute does not require that the order deny the existence of an immunity, but rather "den[y] the benefit of an alleged immunity." R.C. 2744.02(C). In my opinion, any order that addresses immunity but forces a trial is also an order that denies the benefit of an immunity, since one of the "benefits" of Chapter 2744 immunity is the ability to take an immediate appeal and have a reviewing court properly decide the issue as a matter of law. See Lutz v. Hocking Technical College, et al. (May 18, 1999), Athens App. No. 98CA12, unreported, 1999 WL 355187 at *12 fn. 5; id. at *10 (Milligan, J., concurring).
In contrast to the majority, I would adopt the position on this issue taken by Judge Milligan in his well-reasoned Lutz
concurrence:
 [I]t is the claimed "status" as a government agency or employee that is accorded special legislative protection. Whenever the procedural priority accorded such is denied, the government agency (or employee) should have the benefit of an expedited appeal. * * * * Interlocutory appeal is appropriate when prosecuted by a subdivision or its employees where (1) immunity has been claimed as to state based causes of action, (2) the trial court as overruled a motion to dismiss or a motion for summary judgment, and (3) the legal consequence of an opposite ruling by the trial court would have resulted in and end to the litigation on that cause of action or claim.
For the reasons stated earlier, I believe this Court should deny appellant's motion for reconsideration and reinstate our original dismissal of this case pursuant to the decision of the Ohio Supreme Court in Sheward, 86 Ohio St.3d 451 at paragraph three of the syllabus. In the alternative, assuming the current viability of the statute, I would hold that there is a final order for review under R.C. 2744.02(C). Moreover, on the record presently before us, the judgment of the trial court should be reversed and remanded with instructions to enter summary judgment in favor of the defendant.
Presumably, all of the issues raised by this case will come to the attention of the Ohio Supreme Court in due course. However, in the meantime, because of the importance of this decision to political subdivisions and their representatives throughout the state, this Court should sua sponte certify its decision to the Ohio Supreme Court for conflict with the decision of the Fourth District in Lutz v. Hocking Technical College, etal. (May 18, 1999), Athens App. No. 98CA12, unreported, 1999 WL 355187.
[1] See also R.C. Sections 1707.01, 1901.041, 1901.18, 1901.18.1, 1901.20, 1905.03.2, 1907.262, 2305.25, 2305.251, 2307.60,2743.18, 2743.19, 2744.01, 2744.03, 2744.05, 3113.219, 4507.07,5111.81 and 2305.252.
[2] I note that the legislature chose not to extend this immunity to police officers, thus making them open to suit under the R.C. 2744.03(A)(6) exceptions. Cf. Lutz v. Hocking TechnicalCollege et al. (May 18, 1999), Athens App. No. 98CA12, unreported, 1999 WL 355187.
[3] It may be argued that the defendant's common-law immunity does not cover some egregious activities. I suggest, however, that it does immunize him from liability for a tort that was unknown at common law and was not recognized as a cause of action for money damages until 1972. Cf. Anderson v. Minter (1972),32 Ohio St.2d 207, 213.
[4] The majority seems to concede this point, noting that "the legal issues surrounding an immunity claim are often difficult to separate from the factual issues[.]" Majority Opinion, ante at *7.