OPINION
{¶ 1} Plaintiffs-appellants, Olympic Holding Company, LLC, Olympic Title Insurance Company, Title First Agency, Inc., Sutton Land Services, LLC, Sutton Alliance, LLC, and Title Midwest, Inc., appeal from the January 26, 2007 judgment entry of the Franklin County Court of Common Pleas dismissing certain foreign defendants, ACE Limited, Assured Guaranty Re Overseas Ltd., f/k/a ACE Capital Re Overseas Ltd. *Page 2 
("ACRO"), Assured Guaranty Re Ltd., f/k/a Assured Guaranty Re International Ltd., f/k/a ACE Capital Re International Ltd. ("ACRI"), and ACE Bermuda Insurance Ltd. ("ACE Bermuda") ("collectively offshore defendants") for lack of personal jurisdiction pursuant to Civ.R. 12(B)(2). Plaintiffs-appellants also appeal from the February 21, 2007 judgment entry granting in part and denying in part summary judgment in favor of the remaining defendant-appellee, ACE Capital Title Reinsurance Company (ACE Capital Title). For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court, and grant in part and deny in part appellees' motion to dismiss portions of this appeal for lack of jurisdiction.
 {¶ 2} Appellants are title insurance agencies, and appellee ACE Capital Title is a reinsurance company that, during the relevant time period, was a wholly owned subsidiary of ACRO, and an indirect subsidiary of ACRI, ACE Bermuda, and ACE Limited, the offshore defendants. The offshore defendants are closely related legal entities domiciled outside of the United States.
 {¶ 3} This case arose as a result of ACE Capital Title's refusal to go forward with a complex business transaction after many months of planning, negotiation, and part performance. In August 2000, ACE Capital Title proposed to combine its capital resources (including the backing of the offshore defendants) with appellants' expertise in residential and commercial title operations. The goal was to create a new title underwriter business, ultimately of national scope, that would compete with existing underwriters and revolutionize the title insurance business. *Page 3 
 {¶ 4} As part of the overall plan, appellants were to acquire Olympic Title Insurance Company ("OTIC"), a small Ohio based title insurance company. Appellants would use OTIC as their underwriter on all of their title insurance real estate transactions of less than $1 million ("residential transactions"). In addition, ACE Capital Title would become licensed as a direct title insurer in Ohio and elsewhere in addition to its already existing status as a reinsurer. ACE Capital Title would act as a direct insurer on transactions in excess of $1 million ("commercial transactions"). OTIC would act as reinsurer on those transactions, but it would only reinsure the first $100,000 of each policy. ACE Capital Title and certain offshore defendants would reinsure the rest up to $200 million per policy. The overall impact of the plan was to allow appellants to offer reinsurance rates that were "astonishingly better" than what was available in the market.
 {¶ 5} In the first half of 2003, the parties exchanged "term sheets" laying out the essential terms of the deal. The term sheets were authored by Richard Reese, the Chief Operating Officer of ACE Capital Title. Reese testified that "we had come to a pretty comfortable feeling that the term sheet represented a business deal we were both happy with, yes." (Appendix, Exhibit — Reese II, at 293.) The term sheets contained language at the bottom of the page stating: "NOT AN OFFER OF INSURANCE."
 {¶ 6} By mid-2003, Reese stated that ACE Capital Title had a "handshake deal" with appellants with respect to the "strategic alliance" between ACE Capital Title and appellants. Reese testified at his deposition that he used the terms "strategic alliance," "joint venture," "partnership," and "strategic partnership" in the same way. *Page 4 
 {¶ 7} By summer 2003, ACE Capital Title was making the deal its top priority. Around that time, appellants entered into a key element of the strategic alliance, a stock purchase agreement to acquire OTIC. Another key element was a "Capital Support Agreement" that required appellants to provide a financial guaranty to OTIC. The parties dispute whether they ever reached agreement on this element.
 {¶ 8} Reese began drafting a formal title business plan reflecting the Olympic-ACE strategic alliance. In September 2003, Reese traveled to Bermuda to present the business plan to the offshore parent corporations. In mid-November 2003, the offshore Board of Directors voted on and approved the written business plan. ACE Capital Title began informing its customers about the deal.
 {¶ 9} Also in November 2003, appellants applied to the Ohio Department of Insurance ("ODI") for approval to acquire OTIC. Attached to the application was a draft of the Residential Reinsurance Agreement (without the Capital Support Agreement) in which the defendants agreed to reinsure OTIC. Prior drafts of this agreement contained a disclaimer stating:
 This document is intended for discussion purposes only. Neither this document nor any other statement (oral or otherwise) made at any time in connection herewith is an offer, invitation or recommendation to enter into any transaction. Any offer would be made at a later date and subject to contract, satisfactory documentation and market conditions.
The parties dispute whether appellants had permission to remove the disclaimer language or whether this was done without the knowledge of ACE Capital Title. *Page 5 
 {¶ 10} ACE Capital Title submitted its own application to ODI in November 2003 to become a direct title insurer, as opposed to a reinsurer. The application disclosed the offshore defendants' ownership and involvement with ACE Capital Title, and described ACE Capital Title as the "dedicated vehicle" for title insurance and reinsurance for the offshore defendants. Reese testified that ACE Capital Title's application was part of the parties' strategic alliance/joint venture. Additionally, ACE Capital Title hired new personnel to work on the strategic alliance, and ACRO had allocated hours for its personnel to work on the alliance.
 {¶ 11} Through Reese, Ace Capital Title promised to sign the various agreements with appellants after appellants obtained ODI approval and acquired OTIC. On December 5, 2003, Reese represented to appellants that the parties would be writing business early in the first quarter of 2004.
 {¶ 12} At about the same time, on December 2, 2003, the ACE family of companies announced a $1 billion initial public offering ("IPO"). Appellants inquired as to what effect the IPO would have on the deal. They were reassured by Reese that the IPO would help, not hurt, the parties' deal, the deal was still on, the agreement was completed and had "just gone upstairs for signature." (Mossman Deposition, at 132.)
 {¶ 13} On December 22, 2003, the offshore defendants informed ACE Capital Title that they were to cease writing new business immediately. The offshore executives who made the decision to "pull the plug" on the deal knew of the business plan, but made a determination that the title business was only a small part of the overall business of ACE Capital Title, and continuation of the business was a distraction to the IPO activities. *Page 6 
Reese did not inform appellants of this development, and appellants closed on the acquisition of OTIC on December 29, 2003.
 {¶ 14} On January 2, 2004, Howard Kopel, on behalf of the appellants, telephoned Reese to announce the good news of the OTIC closing. Reese then dropped a "bombshell," as he termed it. The ACE family of companies was not going forward with the strategic alliance and would not sign the agreements. The next day, appellants sent ACE Capital Title signed copies of the Residential Reinsurance Agreement dated January 5, 2004, expressly seeking counter-signature by ACE Capital Title. ACE Capital Title refused to sign. On January 6, 2004, ACE Capital Title withdrew its application to ODI and asked that all copies be returned.
 {¶ 15} Reese testified that ACE Capital Title acted absolutely unethically in the entire transaction and to a series of people who had relied upon them for a very long time. (Appendix Exhibit — Reese III at 684.)
 {¶ 16} Shortly thereafter, on January 27, 2004, appellants filed suit. (C.P.C. No. 04-CV-939.) The trial court dismissed the offshore defendants after holding an evidentiary hearing, and the plaintiffs voluntarily dismissed the action without prejudice on May 19, 2006, pursuant to Civ.R. 41(A)(1).
 {¶ 17} The instant case was filed on June 2, 2006, and designated a refiled action. Appellants alleged claims for breach of the strategic alliance joint venture agreement, breach of the reinsurance agreement, specific performance of both the strategic alliance joint venture agreement and the reinsurance agreement, breach of fiduciary duty, *Page 7 
promissory estoppel, negligent misrepresentation, tortious interference with a contractual relationship, tortious interference with a business relationship, and fraud.
 {¶ 18} As they had done in the first action, the offshore defendants moved to dismiss for lack of personal jurisdiction. The parties agreed that the discovery in the first action would be used in the refiled action. On September 20, 2006, ACE Capital Title moved for summary judgment. On December 18, 2006, the trial court issued a decision granting the offshore defendants' motion to dismiss for lack of personal jurisdiction. The trial court relied upon its personal jurisdiction decision in the prior action stating that, "[n]othing has changed since the Court issued that ruling, and the Court sees no reason why it should come to a different result." Decision at 6. On January 26, 2007, the trial court entered a judgment entry dismissing the offshore defendants.
 {¶ 19} On the same day, the trial court issued a decision granting in part ACE Capital Title's motion for summary judgment. The trial court ruled that the contract claims were barred by the Statute of Frauds. The trial court granted summary judgment to ACE Capital Title on all of appellants' contract claims, and the breach of fiduciary duty and negligent misrepresentation claims, reasoning that, without the underlying contract claims, those claims must fail also. The trial court limited the kinds of damages appellants could seek on the fraud and promissory estoppel claims, and ruled that the tortious interference claims could proceed to trial even though the claims were only asserted against the offshore defendants who had already been dismissed from the action. The court included Civ.R. 54(B) language that there was no just cause for delay. This appeal followed. *Page 8 
 {¶ 20} On March 23, 2007, the offshore defendants and ACE Capital Title filed a motion to dismiss, in part, appellants' appeal. The first basis of the motion is the claim that this court lacks subject matter jurisdiction over appellants' still pending fraud and promissory estoppel claims because the trial court did not completely and finally dispose of those claims under R.C. 2505.02 and Civ.R. 54(B).
 {¶ 21} Appellants respond by arguing that the trial court extended its flawed contract claim analysis to the fraud and promissory estoppel claims, and improperly disallowed expectancy damages or lost profits on those claims. Appellants contend that the trial court's erroneous contract conclusions infected its analysis of the promissory estoppel and fraud claims. Since the contract claims are properly before this court, appellants argue that this court should address the promissory estoppel and fraud claims as well. Appellants also claim that appellees did not move for summary judgment as to damages on those claims, and therefore it was improper for the trial court to sua sponte address the issue of damages without briefing or argument by the parties.
 {¶ 22} Appellants' "infection" theory is not the appropriate method of analysis to determine whether there is a final appealable order. To be final and appealable, an order that adjudicates one or more but fewer than all the claims or fewer than all the parties and contains a certification pursuant to Civ.R. 54(B) must meet the two-step test articulated by the Supreme Court of Ohio in Wisintainer v. Elcen PowerStrut Co. (1993), 67 Ohio St.3d 352. First, the appellate court should focus on whether the order is final as defined in R.C. 2505.02. The question is whether the order sought to be appealed affects a substantial right and whether, in effect, it determines an action and prevents a judgment. *Page 9 
Second, the appellate court should review the trial court's determination under Civ.R. 54(B), that there is no just reason for delay.
 {¶ 23} Despite the presence of Civ.R. 54(B) language, the trial court's summary judgment order does not determine the action and prevent a judgment with respect to those claims. For example, in R H Trucking,Inc. v. Occidental Fire Cas. Co. of North Carolina (1981),2 Ohio App.3d 269, 271, this court indicated that if the trial court decided one of the legal issues in the case, but does not finally adjudicate the claim for relief, the trial court's decision does not become a final appealable order merely by the inclusion of "no just reason for delay" language in the trial court's order. If we delay any review of the promissory estoppel and fraud claims until the action is fully adjudicated, appellants would still have relief available to them in the future in the form of another appeal. DeAscentis v. Margello, Franklin App. No. 04AP-4, 2005-Ohio-1520, at ¶ 19. Therefore, no final appealable order exists with respect to those claims, and this court lacks jurisdiction to consider them on appeal.
 {¶ 24} The second basis of the motion to dismiss in part relates to the dismissal of the offshore defendants. The offshore defendants and ACE Capital Title contend that the trial court's January 26, 2007 judgment entry granting the offshore defendants' motion to dismiss for lack of personal jurisdiction is not a final appealable order.
 {¶ 25} Appellants, on the other hand, argue the judgment entry dismissing them is a final appealable order despite the lack of Civ.R. 54(B) language. Appellants rely upon the recent Supreme Court of Ohio case of Natl. City Commercial Capital Corp. v. AAAA at Your Service,Inc., 114 Ohio St.3d 82, 2007-Ohio-2942. In National City, the Supreme *Page 10 
Court of Ohio resolved a conflict between appellate districts concerning whether a dismissal other than on the merits which prevents refiling in the trial court is a final appealable order. As in this case, appellants in National City were appealing a motion to dismiss for lack of personal jurisdiction pursuant to Civ.R. 12(B)(2). The Supreme Court of Ohio held that the dismissal, pursuant to Civ.R. 12(B)(2), which prevented refiling in the trial court, was a final appealable order.
 {¶ 26} Here, appellants cannot refile and, in essence, a final judgment has been rendered against them because the issue of personal jurisdiction has been disposed of, and there is nothing left for determination by the trial court. The motion to dismiss the portion of the appeal concerning jurisdiction over the offshore defendants is, therefore, not well-taken and denied.
 {¶ 27} In conclusion, the motion to dismiss a portion of this appeal is granted with respect to the promissory estoppel and fraud claims, and denied with respect to the dismissal of the offshore defendants.
 {¶ 28} Turning to the merits of the appeal, appellants have asserted the following assignments of error:
 I. The trial court erred in granting summary judgment on plaintiffs' contract claims where there were fact disputes regarding whether defendants are estopped from relying upon a statute of frauds defense.
 II. The trial court erred in granting summary judgment on plaintiffs' contract claims where the parties' agreements were capable of performance in one year and thus fall outside the statute of frauds.
 III. The trial court erred in granting summary judgment on plaintiffs' contract claims where there were signed writings *Page 11 
chargeable against the ACE defendants that satisfy the statute of frauds.
 IV. The trial court erred in granting summary judgment on plaintiffs' contract claims where there was ample record evidence of enforceable "agreements to agree."
 V. The trial court erred in granting summary judgment on plaintiffs' breach of fiduciary duty and fraudulent concealment claims where there was a disputed factual record.
 VI. The trial court erred in granting summary judgment on plaintiffs' negligent misrepresentation claim given the record evidence before it.
 VII. The trial court erred in sua sponte limiting plaintiffs' damages regarding promissory estoppel and fraud.
 VIII. The trial court erred in failing to analyze the long arm statute, Civil Rule 4.3(A), and the principles of agency.
 IX. The trial court erred in improperly relying upon a dissolved interlocutory decision in a voluntarily dismissed case to decide personal jurisdiction, contrary to its obligation of de novo review.
 X. The trial court erred in failing to decide personal jurisdiction on a prima facie standard, given that no evidentiary hearing occurred in this case.
 XI. The trial court erred in failing to consider the preponderance of the record evidence supporting personal jurisdiction, as set forth in plaintiffs' appendix of personal jurisdiction evidence, which the trial court ignored.
 XII. The trial court erred when it wrongly dismissed the offshore ACE defendants while properly recognizing that tortious interference claims asserted against them are entitled to proceed to trial, because such claims satisfy the long arm statute.
 {¶ 29} The law governing motions for summary judgment is clearly set forth in Civ.R. 56. In Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107, the Supreme *Page 12 
Court of Ohio clarified the burdens of both parties with respect to a motion for summary judgment:
 [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
(Emphasis sic.)
 {¶ 30} In Ohio, these principles are embodied in a three-prong test taken directly out of Civ.R. 56: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. RelationsBd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 31} Moreover, "[credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson PlumbingProducts, Inc. (2000), 530 U.S. 133, *Page 13 120 S.Ct. 2097, 2110. This court follows these well-settled principles. See, e.g.,Baeer v. Scotts Co., Franklin App. No. 01AP-323, 2001-Ohio-3978.
 {¶ 32} Appellate review of summary judgment motions is de novo.Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. When reviewing a trial court's decision granting summary judgment, we conduct an independent review of the record, and the appellate court "stands in the shoes of the trial court." Mergenthal v. Star BancCorp. (1997), 122 Ohio App.3d 100,103.
 {¶ 33} Assignments of error one through four concern appellants' contract claims and specifically, the applicability of the statute of frauds. As noted above, the trial court disposed of these claims on the basis of the affirmative defense of the statute of frauds.
 {¶ 34} Appellants argue that the statute of frauds does not bar the claims in this case because ACE Capital Title is estopped from using the statute of frauds as a defense because it misrepresented its intent to sign the agreements at issue. Appellants also claim that the statute of frauds does not apply to their claims because the contracts at issue are capable of performance within a year. Appellants further argue that even if the statute of frauds does apply to their contract claims, there are signed writings that fulfill the statute of frauds. And finally, appellants argue that the parties had created a joint venture, they had reached mutual agreement on the essential terms of the deal and, under Ohio law, there existed an enforceable "agreement to agree."
 {¶ 35} ACE Capital Title argues that the deal was never consummated, that sophisticated and experienced business people negotiated at arms length, but failed to conclude their negotiations with final, executed documentation. Therefore, according to *Page 14 
ACE Capital Title, the statute of frauds bars the contract claims, and none of the exceptions — sufficient writings, capability of performance within one year, or promissory estoppel apply. Additionally, ACE Capital Title argues that the documents themselves manifest a clear intent not to be bound absent a signature.
 {¶ 36} Ohio's statute of frauds, R.C. 1335.05, states in pertinent part:
 No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.
 {¶ 37} Appellants assert that, under the circumstances of this case, the doctrine of promissory estoppel bars ACE Capital Title from using the statute of frauds defense. Appellants rely upon the case ofMcCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt,Inc. (1993), 87 Ohio App.3d 613, to support their claim.
 {¶ 38} McCarthy involved negotiations between a law firm and its landlord for a lease of office space. The Eighth District Court of Appeals applied the doctrine of promissory estoppel and reversed summary judgment. The court found genuine issues of material fact existed as to whether the parties had agreed to an oral lease, and whether the defendant landlord falsely represented to the law firm that it would deliver a written lease.
 {¶ 39} The Eighth District Court of Appeals adopted the approach taken by other states that the doctrine of promissory estoppel may be used to preclude a defense of the statute of frauds when there has been: (1) a misrepresentation that the statute's *Page 15 
requirements have been complied with; or (2) a promise to make a memorandum of the agreement. In Moore Burger, Inc. v. Phillips PetroleumCo. (Tex. 1973), 492 S.W.2d 934, a case cited with approval inMcCarthy, the Supreme Court of Texas examined similar circumstances and held that the determinative promise in that case was the promise to sign a written agreement which itself complied with the statute of frauds.
 {¶ 40} In this case, as in McCarthy, there are factual disputes as to whether the parties reached agreement on all the essential terms of the strategic alliance. Appellants argue that they presented sufficient evidence from which a jury could conclude that the parties reached definite and mutual agreement on all essential business terms.
 {¶ 41} Appellants presented evidence by way of deposition that the term sheets set forth the terms that had been spelled out and agreed upon. However, the parties dispute whether they ever reached agreement on the capital support issue. The parties also dispute whether appellants were given permission to remove disclaimer language from the residential reinsurance agreement, and whether they agreed as to the terms of the residential reinsurance agreement. In addition, the parties dispute whether they had agreed to the terms of the agency agreement, and whether they had reached a mutual agreement to share profits, losses, risk, and operating responsibility.
 {¶ 42} ACE Capital Title urges this court to find that the record supports the legal conclusion that no binding agreement existed because the parties manifested an unambiguous intent not to be bound. ACE Capital Title argues that disclaimer language in the residential reinsurance agreement supports their argument as well as the efforts of appellants to obtain signatures after they acquired OTIC. However, as noted above, the *Page 16 
parties dispute whether ACE Capital Title gave them permission to remove the disclaimer in their application to ODI, and what can be inferred if it is shown that permission was given.
 {¶ 43} In Ohio, an agreement to agree is not per se unenforceable. InNormandy Place Assocs. v. Beyer (1982), 2 Ohio St.3d 102, 105, the Supreme Court of Ohio stated:
 * * * It is thus not the law that an agreement to make an agreement is per se unenforceable. The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced.
 {¶ 44} However, courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be bound until the terms of the agreement are formalized in a signed written document. See Richard A. Berjian, D.O., Inc. v. OhioBell Tel. Co. (1978), 54 Ohio St.2d 147, 151.
 {¶ 45} After reviewing the evidence and bearing in mind the relative burdens of the parties on a motion for summary judgment, we find genuine issues of material fact exist on the question of whether the parties reached mutual agreement on all essential terms of the agreements. The fourth assignment of error is well-taken.
 {¶ 46} In addition, appellants have presented evidence that Reese promised that ACE Capital Title would sign the agreements once appellants acquired OTIC. Reese also testified that the partieshad reached agreement and were implementing and memorializing the terms of the joint venture. Appellants were told that the agreement was completed and had just gone upstairs for signature. *Page 17 
 {¶ 47} ACE Capital Title does not dispute the appellants' evidence that it made express promises to produce signed written memoranda of the parties' agreements. Rather, ACE Capital Title argues that the parties were sophisticated parties represented by skilled counsel, and thus a higher standard applies when appellants attempt to evade the bar of the statute of frauds through promissory estoppel.
 {¶ 48} The doctrine of promissory estoppel arises in equity, and is intended to prevent fraudulent oral promises upon which another party relies to its detriment. ACE Capital Title's own chief operating officer stated that his company acted absolutely unethically in the entire transaction and to a series of people who had relied upon them for a very long time. Under these circumstances, it is appropriate to allow appellants to assert the equitable doctrine of promissory estoppel. Appellants have met their burden to present evidence that ACE Capital Title should be equitably estopped from using the affirmative defense of the statute of frauds because of a misrepresentation to supply signed written memoranda of the parties' agreements. The first assignment of error is well-taken.
 {¶ 49} In conclusion, genuine issues of material fact preclude summary judgment on appellants' contract claims. The claims must be remanded for trial, and therefore we sustain assignments of error one and four. Given our disposition of these assignments of error, we decline to address assignments of error two and three, as we believe the issues to be moot.
 {¶ 50} Assignment of error five concerns appellants' claims for breach of fiduciary duty and fraudulent concealment. The trial court granted summary judgment in favor of *Page 18 
ACE Capital Title on these claims because in its view there was no enforceable joint venture agreement, and therefore there could be no special relationship between the parties sufficient to create a fiduciary relationship or to impose a duty on ACE Capital Title to disclose material information. ACE Capital Title asserts the same position on appeal.
 {¶ 51} The elements of an action for breach of fiduciary duty are similar to those for ordinary negligence, with the difference being a need to establish that the duty arose out of a fiduciary relationship. A fiduciary relationship is defined as one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." Landskroner v. Landskroner, 154 Ohio App.3d 471,2003-Ohio-4945, at ¶ 32, quoting Ed Schory Sons, Inc. v. Soc. Natl.Bank (1996), 75 Ohio St.3d 433, 442.
 {¶ 52} Appellants assert that the existence of the joint venture itself creates the requisite fiduciary duty of full disclosure and a duty against self dealing or secret advantage. Also, appellants claim that their role as partners or "strategic partners" with ACE Capital Title created a special duty for both parties to maintain the highest operating and ethical standards with each other.
 {¶ 53} Appellees argue that the parties were acting to protect their own interests and negotiating at arms length in a commercial transaction. A fiduciary relationship does not exist under those circumstances. Landskroner, at 486, citing Blon v. Bank One, Akron,N.A. (1988), 35 Ohio St.3d 98, 101.
 {¶ 54} In Doctors Hosp. v. Hazelbaker (1995), 106 Ohio App.3d 305,309-310, this court held that "joint venturers may incur fiduciary obligations to each other regardless of *Page 19 
whether any written agreement is then in force, since such a writing is not necessary for the creation of such a venture." The court went on to quote Al Johnson Constr. Co. v. Kosydar (1975), 42 Ohio St.2d 29, paragraph one of the syllabus: "A joint venture is `* * * an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, to each of the other coadventurers * * *.'" (Emphasis sic.)
 {¶ 55} Appellants have presented evidence that the parties embarked upon a complex joint venture to revolutionize the title insurance business by combining ACE Capital Title's and the offshore defendants' financial resources with appellants' expertise in residential and commercial title insurance. ACE Capital Title considered appellants to be their strategic partners, and there is deposition testimony that ACE Capital Title sought to maintain the highest operating and ethical standards with their partners. In this case, just as in DoctorsHosp., there is at the very least a material issue of fact whether appellants and ACE Capital Title were joint venturers and, by extension, owed a fiduciary duty to each other. The trial court erred in determining there was no possibility of a joint venture between the parties in this case. Given ACE Capital Title's admission of unethical behavior, the claim for breach of fiduciary duty should proceed to trial.
 {¶ 56} After reviewing the complaint, we are unable to locate a claim for "fraudulent concealment," apart from the fraud claim to be addressed in connection with *Page 20 
assignment of error seven. Accordingly, appellants' fifth assignment of error is sustained in part with respect to the claim for breach of fiduciary duty, and as discussed in connection with the motion to dismiss this appeal, in part, we are without jurisdiction to consider appellants' fraud claims.
 {¶ 57} In their sixth assignment of error appellants argue that the disputed factual record creates triable issues on their claim for negligent misrepresentation. In Ohio, the elements of negligent misrepresentation have been set out as follows:
 One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Marasco v. Hopewell, Franklin App. No. 03AP-1081, 2004-Ohio-6715, at ¶ 52 (emphasis sic), quoting Delman v. Cleveland Heights (1989),41 Ohio St.3d 1, 9. "The question of whether or not the actor used reasonable care in obtaining or communicating information is one for the jury."Marasco, at ¶ 53.
 {¶ 58} Appellees cite Ziegler v. Findlay Industries, Inc. (N.D.Ohio 2006), 464 F.Supp.2d 733, 738, for the proposition that an additional requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in a business transaction.
 {¶ 59} In Ziegler, the federal district court for the Northern District of Ohio, interpreting Ohio law, declined to extend the tort of negligent misrepresentation to a claim arising in the employee-employer relationship. Citing an unreported federal case, the *Page 21 
court went on to state: "A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction." Hayes v. Computer Assoc. Intern., Inc., (N.D.Ohio 2003) No. 3:02CV7452. "`This relationship occurs only in "special" circumstances. Usually the defendant is a professional (e.g., an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This `special' relationship does not exist in ordinary business transactions.' Id. Those `who are in the business of supplying information for the guidance of others typically include attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks.'" Nichols v. Ryder Truck Rentals, Inc. (June 23, 1994), Cuyahoga App. No. 65376, citing McCarthy.
 {¶ 60} Here, appellants have not set forth evidence of specific facts sufficient to create a genuine issue of material fact as to whether the parties were in a "special relationship" with each other.
 {¶ 61} Appellants' sixth assignment of error is not well-taken and is overruled.
 {¶ 62} Appellants' seventh assignment of error relates to appellants' promissory estoppel and fraud claims. As discussed in connection with the offshore defendants' and ACE Capital Title's motion to dismiss, in part, appellants' appeal, the trial court's resolution of those claims did not result in a final appealable order. As such, we are without jurisdiction to consider the merits of this assignment of error. *Page 22 
 {¶ 63} In assignments of error eight through eleven, appellants challenge the decision of the trial court that the offshore defendants must be dismissed for lack of personal jurisdiction.
 {¶ 64} In their eighth assignment of error, appellants assert that the trial court failed to analyze the jurisdiction issue in terms of appellants' agency theory of personal jurisdiction. Appellants alleged personal jurisdiction over the offshore defendants based upon the activity of their alleged agent, ACE Capital Title. Appellants claim that the failure of the trial court to discuss the concepts of agency or apparent agency under Ohio law means that it erred by failing to consider the applicable law. We disagree.
 {¶ 65} Admittedly, the trial court's decision did not include analysis of the relevant factors to be considered in determining personal jurisdiction. Instead, the trial court stated that it had reached the same conclusion (based on the same evidence) that it had in the previously dismissed case. The court held that appellants "still have not satisfied the elements needed for this Court to exercise proper jurisdiction over the Ace Foreign Defendants." (Decision Granting the ACE Foreign Defendants' Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, Dec. 18, 2006, at 7.) It is clear from a review of the record that the agency issue was foremost in the trial court's consideration of the issue. The eighth assignment of error is not well-taken and is overruled.
 {¶ 66} In assignment of error nine, appellants argue that the trial court erred in failing to conduct a de novo review of the issue and, instead, simply repeated its decision in the previously dismissed case to decide personal jurisdiction. *Page 23 
 {¶ 67} In its judgment entry of January 26, 2007 dismissing the foreign defendants, the trial court stated that it had conducted a de novo review of the evidentiary record. Also, in its November 20, 2006 Recusal Decision and Entry, the trial court explicitly indicated it would consider the evidence and arguments de novo, stating:
 The Court understands Plaintiffs fears concerning the bias that the previous case may cause it. Plaintiffs, however, should rest assured that the Court will look at all the arguments and evidence presented by both Plaintiffs and Defendants de novo. * * * It will look at Plaintiffs' new claims and old claims as if they were newly before the Court. The Court has no interest in preventing Plaintiffs or Defendants from getting a fair shake. It is only interested in treating all parties before it fairly.
 {¶ 68} Appellants contrast that statement of the trial court with (1) the court's decision to incorporate the evidentiary hearing that occurred in the voluntarily dismissed action into the present action; (2) its statement in the present action that "[n]othing has changed since the Court issued that ruling, and the Court sees no reason why it should come to a different result" (Personal Jurisdiction Decision of December 18, 2006, at 6); and (3) its statement that it would be "completely unfair to the Ace Foreign Defendants" to reach any different conclusion than it had in the initial action. Id. at 7.
 {¶ 69} A general principle of appellate review is the presumption of regularity; that is, a trial court is presumed to have followed the law unless the contrary is made to appear in the record. Werts v.Werts, Summit App. No. 23610, 2007-Ohio-4279. Here, the trial court clearly stated that it would conduct a de novo review of the jurisdictional evidence. The court's review included the evidence from the dismissed action because the parties stipulated to the use of all discovery materials from the original action. The *Page 24 
trial court's decision to use the prior discovery and hearing transcript was not a refusal to conduct a de novo review. Instead, the trial court indicated that it had reached the same conclusion based on the same record evidence. The trial court's conclusion that "[n]othing has changed" from the findings and conclusions of the original action is insufficient to overcome the presumption that the trial court conducted a de novo review of the evidence. The ninth assignment of error is not well-taken and is overruled.
 {¶ 70} In their tenth assignment of error, appellants contend that the trial court erroneously evaluated the jurisdictional evidence on a preponderance of the evidence standard which is appropriate when an evidentiary hearing is held as opposed to the lesser prima facie standard which courts apply when there has been no evidentiary hearing.
 {¶ 71} When a party moves for dismissal for lack of personal jurisdiction, the nonmoving party bears the burden of establishing the court's jurisdiction. Jurko v. Jobs Europe Agency (1975),43 Ohio App.2d 79, 86. If the court does not hold an evidentiary hearing, the nonmoving party need only make a prima facie showing of jurisdiction to withstand the motion to dismiss. Giachetti v. Holmes (1984), 14 Ohio App.3d 306. If the court conducts an evidentiary hearing, the nonmoving party must establish the trial court's jurisdiction by a preponderance of the evidence. Levengood v. Levengood (June 7, 2000), Tuscarawas App. No. 1998AP100114.
 {¶ 72} In this case, the trial court considered the stipulated discovery from the dismissed action as well as the transcript of the evidentiary hearing that was held before a magistrate in the original case. The trial court indicated that the testimony from the prior *Page 25 
action aided the court in making its previous decision to grant the motion to dismiss. Any such reliance on this testimony was indirect in that the magistrate conducted the hearing, and the trial court overruled the objections to the magistrate's decision. Thus, although the trial court did not have the benefit of a transcript of the evidentiary hearing when it made its initial decision, it can be said that it relied on the testimony in making its decision.
 {¶ 73} The trial court went on to determine that the evidentiary transcript was properly before the court as part of the stipulated discovery, and therefore it could rely on that transcript in making its determination in the refiled case. Since a hearing was held, and the trial court was relying on the transcript of that earlier hearing, the trial court concluded that it must apply the preponderance standard of proof to appellants' assertion of personal jurisdiction.
 {¶ 74} We find no error in the trial court's decision to use the prior evidentiary hearing transcript and to apply the preponderance standard of proof. Civ.R. 41 does not, read in its entirety, completely erase the memory of a previously filed action. Indus. Risk Insurers v. LorenzEquip. Co. (1994), 69 Ohio St.3d 576, 579. In Industrial RiskInsurers, the Supreme Court of Ohio held that "[i]n an action that has once been voluntarily dismissed pursuant to Civ.R. 41(A)(1)(a), a trial court, when ruling on a Civ.R. 41(B)(1) motion to dismiss for failure to prosecute, may consider the conduct of the plaintiff in the prior action." Id. at syllabus.
 {¶ 75} Here, to ignore the prior hearing would force the trial court to go through the needlessly repetitive step of ordering a second evidentiary hearing to present the same *Page 26 
evidence that was already before the court in the form of a transcript. In addition, we agree with the reasoning of the trial court that applying a prima facie standard in this case would work an injustice to the parties. As the trial court stated:
 * * * All a party would have to do is file the original action, go through an evidentiary hearing, have a determination that the Court lacks personal jurisdiction, and then dismiss the case pursuant to Civ. R. 41 (A)(1)(a). Then that party could refile the case, take all the positive evidence from the previous hearing and stick it in his/her complaint, and then argue that the Court must apply the "prima facie" standard. This system would allow the party seeking to assert personal jurisdiction over another the benefit of the evidentiary hearing, without providing the other party the same benefit. * * *
(Personal Jurisdiction Decision, at 7.)
 {¶ 76} Just as the plaintiff's conduct in Industrial RiskInsurers could be considered by the trial court in the subsequent action, the stipulation to all the prior discovery implicates the evidentiary hearing in the prior action. The trial court was within its discretion to deem the hearing transcript part of the discovery before the court. Appellants cannot avoid all the consequences of the previously filed action when they stipulate to the use of the prior discovery. The tenth assignment of error is not well-taken and is overruled.
 {¶ 77} In their eleventh assignment of error, appellants contend that the trial court erred in deciding that it lacked jurisdiction over the foreign defendants under their agency theory. In essence, appellants are arguing that the decision of the trial court is against the manifest weight of the evidence.
 {¶ 78} To recap, the offshore defendants filed a Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction. Appellants responded by asserting that the foreign *Page 27 
defendants, as principals, were subject to personal jurisdiction in Ohio by virtue of the actions of its agent, ACE Capital Title. See Civ.R. 4.3 and Ohio's long-arm statute R.C. 2307.382(A)(1) and (2). Appellants also claim the trial court ignored the factors considered by courts when they determine personal jurisdiction under an agency theory.
 {¶ 79} ACE Capital Title and the foreign defendants argue that the absence of an agency relationship precludes personal jurisdiction over the foreign defendants. Primarily, appellees argue that appellants failed to prove undue control by the parent corporation over the subsidiary sufficient to subject the foreign defendants to the personal jurisdiction of the trial court.
 {¶ 80} At the outset, we note that there is no dispute regarding personal jurisdiction over ACE Capital Title. Therefore, appellants need only prove by a preponderance of the evidence that ACE Capital Title was acting as the agent for the offshore defendants for personal jurisdiction over the offshore defendants to be appropriate.
 {¶ 81} Appellate review of a motion to dismiss under Civ.R. 12(B)(2) is de novo if no evidentiary hearing is held. Info. Leasing Corp. v.Jaskot, 151 Ohio App.3d 546, 550, 2003-Ohio-566, at ¶ 9. Here, we have a situation in which the trial court is presumed to have reviewed discovery including a transcript of an earlier proceeding involving the same issue. The trial court had volumes of evidence before it and, as discussed in connection with the previous assignment of error, applied the preponderance of the evidence standard. However, the trial court's decision does not contain credibility determinations, analysis, or discussion of the evidence it reviewed. On review, we have the same *Page 28 
evidence before us, and therefore we review the decision of the trial court under our normal deferential standard of review in civil cases, to wit: Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.CE. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 82} We begin our review by focusing on the factors courts consider in deciding whether to impute the subsidiary's contacts with Ohio to the foreign parent company for purposes of personal jurisdiction.
 {¶ 83} In Rucker v. Personal Finance Co. of Columbus (1948),86 Ohio App. 110, the court considered the question of whether the subsidiary was doing the business of the parent or whether there were distinct businesses of the parent and subsidiary.
 {¶ 84} "The fact that the stock of a subsidiary is held by a foreign corporation and that the foreign corporation exercises control over the subsidiary through the ownership of the stock, the corporate identity being formally preserved, is not sufficient to subject such foreign corporation to the jurisdiction of a court of this state." Id. at paragraph four of the syllabus.
 {¶ 85} In MacDonald v. Navistar Intern. Transp. Corp. (S.D.Ohio 2001),143 F.Supp.2d 918, 923-924, the United States District Court for the Southern District of Ohio identified fictitious corporate separation, holding the subsidiary out as its agent, and undue control of the parent over the subsidiary as factors to be considered. In order to impute jurisdiction of a subsidiary to a parent company, the plaintiffs must show that the parent exercised the type of control necessary to ascribe to it the activities of the *Page 29 
subsidiary. See, e.g., Escude Cruz v. Ortho Pharmaceutical Corp.
(C.A.Puerto Rico, 1980), 619 F.2d 902, 905.
 {¶ 86} In In re Lupron Marketing and Sales Practices Litigation
(D.Mass. 2003), 245 F.Supp.2d 280, 292, the court indicated that a parent's oversight of a subsidiary's business plan is not ordinarily sufficient to tip the jurisdictional scale. Id. Nor is approval of a marketing scheme or authority to approve the plans of the subsidiary sufficient to subject the parent to personal jurisdiction. Id.
 {¶ 87} The foreign defendants have directed our attention toUnited States v. Bestfoods (1998), 524 U.S. 51, 72, 118 S.Ct. 1876, a veil piercing case, in which the United States Supreme Court stated that the fact that directors of a parent serve as directors of its subsidiary is not sufficient standing alone to expose the parent to liability for the subsidiary's acts.
 {¶ 88} In Hitt v. Nissan Motor Co., Ltd. (D.C.Fla. 1975),399 F.Supp. 838, 850, the court looked at the following factors in determining whether a foreign corporation is transacting business in a forum through its subsidiary for purposes of state long-arm statutes: withdrawal of foreign company from jurisdiction where it had been transacting business while establishing local subsidiary to continue the business and dominating its board of directors; local subsidiary performs all business which parent itself could perform by its own officials were it present, i.e., subsidiary a mere conduit for products of the parent; overlap in boards of directors, officers and significant interchange of personnel between parent and subsidiary; exchange between parent and subsidiary of records and documents; listing of subsidiary as branch or agent of parent or that parent and subsidiary *Page 30 
are part of one entity; sending of technical personnel to subsidiary by parent at its expense to assist the latter with its operations; advertising activities by subsidiary to benefit parent and vice versa; and inconvenience to parent in defending in forum balanced with benefits and advantages from their activities within the forum. Id. at 850.
 {¶ 89} Here, ACE Capital Title is wholly owned by the offshore defendants. However, as discussed above, mere stock ownership is insufficient to establish personal jurisdiction. Appellants then point to the overlap of officers and directors, and shared employees as evidence that there is little separation between the parent and subsidiary. ACE Capital Title does not have its own employees or office space. It has a services agreement with ACRI for those things, as well as office supplies, office equipment, accounting department and legal department.
 {¶ 90} ACE Capital Title's business was that of reinsuring title policies from primary title insurers. In its sales and marketing literature, ACE Capital Title is referred to as the "dedicated vehicle" for the ACE family of companies because it was the only ACE entity that was involved in title insurance and reinsurance throughout the ACE group of companies.
 {¶ 91} Through internal reinsurance layering, provided by the offshore defendants, ACE Capital Title, with $45 million in its own assets, was able to reinsure risk that amounted to $200 million per policy and $30 billion in total exposure. Moreover, the offshore defendants always provided an unconditional guaranty of every financial obligation incurred by ACE Capital Title by means of a "keepwell agreement." *Page 31 
 {¶ 92} The offshore defendants shared the name "ACE" with ACE Capital Title as well as a common logo, a common website, joint publications, marketing and branding. ACE Limited controlled the marketing of ACE Capital Title and its use of the "ACE" name. Marketing materials needed to be approved. There is an ACE newsletter authored by an attorney in Columbus, Ohio that is disseminated to clients and potential clients.
 {¶ 93} ACE Capital Title did not have the authority to bind the offshore defendants. Rather, the offshore defendant ACRI reviewed the joint venture/strategic alliance business plan and voted to approve the plan, to authorize ACE Capital Title to apply to the ODI for a license in Ohio, and to authorize ACRO to hire additional personnel to work with appellants to implement the plan.
 {¶ 94} ACE Capital Title represented to appellants that final documents would be and were being signed after appellants acquired OTIC.
 {¶ 95} The offshore defendants made the decision as to whether ACE Capital Title would be allowed to participate in the IPO. ACE Capital Title played no part in that decision.
 {¶ 96} Very little, if any, of the evidence presented by appellants is contested as factually inaccurate. The foreign defendants, of course, disagree with the inferences appellants draw from this evidence. The foreign defendants argue that ACE Capital Title did not conduct any of its parents' business because it was the dedicated vehicle for title reinsurance and the foreign defendants were not in that business. The foreign defendants also argue that they did not control the day-to-day operation of ACE Capital Title. The arrangement to carry ACE Capital Title employees as a subsidiary of one of *Page 32 
the foreign defendants was merely a payroll employer, but it did not grant the foreign defendant any authority to control ACE Capital Title's employees. ACE Capital Title observed corporate formalities, and acting through its management, had the authority to write policies. They note that ACE Capital Title had paid in capital surplus of over $25 million from which it could pay claims.
 {¶ 97} The foreign defendants argue that the overlapping officers and directors and the co-branding efforts are makeweight factors that do not substantively affect the lack of an agency relationship between the parents and the subsidiary.
 {¶ 98} After review of all the assertions and the evidence underlying them, we conclude that there is some competent, credible evidence to affirm the judgment of the trial court with respect to personal jurisdiction over the foreign defendants. Our conclusion is based primarily on the following factors. The evidence showed that ACE Capital Title was not distributing a product of the parent corporation. There was a separate nature of the business of ACE Capital Title from that of the foreign defendants. ACE Capital Title was the only ACE entity writing title reinsurance policies. ACE Capital Title observed corporate formalities. The degree of control exercised by the foreign defendants over day-to-day operations is negligible. Granted there were some shared officers and directors who were involved in approving the business plan of the strategic alliance and the ultimate decision to pull the plug on the parties' deal, but these were major decisions affecting the future of ACE Capital Title and not the typical day-to-day type of control that would lead to the conclusion of undue control. Finally, there is an *Page 33 
absence of evidence that ACE Capital Title had the authority to bind the foreign defendants.
 {¶ 99} The eleventh assignment of error is not well-taken and is overruled.
 {¶ 100} In their twelfth assignment of error, appellants contend that the trial court erred in dismissing the offshore defendants while indicating that the tortious interference claims could proceed to trial.
 {¶ 101} Based on our consideration of the personal jurisdiction issue with respect to the offshore defendants, it is our conclusion that such claims cannot survive as they were asserted only against the foreign defendants. Appellants have not demonstrated that the offshore defendants were doing or soliciting business in Ohio or engaging in a persistent course of conduct with respect to Ohio. The twelfth assignment of error is not well-taken and is overruled.
 {¶ 102} Based on the foregoing, we grant in part and deny in part appellees' motion to dismiss part of this appeal for lack of jurisdiction. No final appealable order exists with respect to the promissory estoppel and fraud claims, and this court lacks jurisdiction to consider them on appeal. Therefore, that portion of the motion to dismiss in part is granted. The motion to dismiss the portion of the appeal concerning jurisdiction over the offshore defendants is not well-taken and denied.
 {¶ 103} We affirm in part and reverse in part the judgment of the trial court. Specifically, we sustain assignments of error one and four, and overrule assignments of error two and three as moot. Appellants' fifth assignment of error is sustained in part with respect to the claim for breach of fiduciary duty, and, as discussed in connection with the *Page 34 
motion to dismiss in part this appeal, we are without jurisdiction to consider appellants' fraud claims. Appellants' sixth assignment of error is overruled. Appellants' seventh assignment of error relates to appellants' promissory estoppel and fraud claims, and we are without jurisdiction to consider the merits of this assignment of error. Assignments of error eight, nine, ten, eleven, and twelve are overruled.
 {¶ 104} The judgment of the Franklin County Court of Common Pleas to dismiss the offshore defendants for lack of personal jurisdiction is sustained, and the judgment of the trial court granting in part and denying in part summary judgment in favor of ACE Capital Title is affirmed in part and reversed in part and this matter is remanded for further proceedings in accordance with this opinion.
Motion of appellees to dismiss the appeal in part is granted in partand denied in part. Judgment affirmed in part and reversed in part andremanded for further proceedings.
 BROWN and FRENCH, JJ., concur. *Page 1