GARG, APPELLANT, *v.* VENKATARAMAN ET AL., APPELLEES.

(No. 2378—Decided October 12, 1988.)

*Frank Cicconetti,* for appellant.
*Thomas M. Parker,* for appellees.

CACIOPPO, J. In April 1983, plaintiff-appellant, Yogesh Garg, and defendant-appellee, Bala Venkataraman ("Bala"), entered into a buying group agreement ("BGA") with defendants-appellees, William Martin and James Taggart, who were acting on their own behalf and on behalf of their family members who were shareholders. This agreement provided, *inter alia,* that Garg and Bala would purchase fifty-one percent of the shares of Magni-Power Company in order to qualify the corporation for minority business enterprise ("MBE") status, and further provided that Garg and Bala would acquire all of the shares of the corporation by 1993. Garg initially acquired one thousand eight hundred ten shares and Bala purchased nine hundred five shares. The BGA also contained provisions concerning debentures and election of directors.

On May 7, 1985, forty-six debentures, held by Martin, Taggart, and Ruth Taggart were converted into four hundred six shares of stock. On May 12, 1985, Bala, Martin, and Taggart executed two written agreements, the gist of which restricted the transfer of their shares. At the annual shareholders' meeting on May 31, 1985, two slates of directors were nominated. The slate that had been elected the previous two years was nominated by Garg. A different slate was nominated by Bala; Bala's slate was elected by a margin of one thousand six hundred forty-two votes. After the shareholders' meeting, a meeting of the board of directors was held at which Garg was removed as chief executive officer ("CEO") of the corporation, a position he had held the previous two years.[1]

---

[1] Shortly after his termination, Garg filed his first suit, naming as defendants Bala, Martin, and Taggart, as well as the corporation and Bala's brother. Garg sought injunctive relief to set aside the election of directors and restrain another election. Of the four counts in the complaint, the parties agreed to a hearing on one count. The trial court ruled against Garg and entered a final judgment in accordance with Civ. R. 54(B). On appeal, we affirmed the judgment. *Garg* v. *Venkataraman* (May 6, 1987), Wayne App. No. 2141, unreported. However, while the appeal was pending, Garg filed a second complaint which is now the subject of the within appeal.

In March 1987, Garg filed a complaint naming Bala, Martin, and Taggart as defendants. The three-count complaint alleged breach of fiduciary and contractual duties, tortious interference with business relationships, and conspiracy to economically injure Garg. Garg demanded judgment in the amount of his salary as CEO, plus the equivalent of the fair market value of his shares in the company had it become a public corporation. Garg also requested punitive damages. The defendants filed an answer, and thereafter filed a motion for summary judgment. Garg replied to the motion for summary judgment by claiming that he had a joint venture agreement with Bala which provided, *inter alia,* for his employment as CEO for a ten-year period and a plan to make the corporation public by 1993. After the defendants filed a response to Garg's reply, the trial court made findings of fact and conclusions of law, and granted summary judgment in favor of the defendants. Garg now appeals.

### Assignment of Error 1

"The trial court erred as a matter of law by holding the provisions of the joint venture agreement between the appellant and Venkataraman were unenforceable by application of the statute of frauds."

Garg's claims essentially turn on the enforceability of the joint venture agreement he alleges to have made with Bala. Under the first assignment of error, Garg argues that the joint venture agreement guaranteed his position as CEO for a ten-year period, and also called for Garg and Bala to make the company a public corporation by 1993. The trial court found that this agreement violated R.C. 1335.05, the Statute of Frauds.

On appeal, Garg relies on the proposition that a joint venture contract need not be express, but may also be implied. While this is maybe a correct analysis, it is also an incomplete one.

R.C. 1335.05 provides in pertinent part:

"No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

While joint venture agreements may be oral, they are, nonetheless, still contracts, and thus subject to all of the applicable requirements of contract law, including the Statute of Frauds. See Henn & Alexander, Laws of Corporations and Other Business Enterprises (3 Ed. 1983) 106, Section 49. In his effort to enforce a ten-year agreement, Garg's argument ignores the one-year time limit for performance set forth in the statute.

Garg attempts to bypass the writing requirement through a claim of promissory estoppel. While promissory estoppel can be used to defeat a defense based on the Statute of Frauds, it cannot be applied to the terms of the joint venture because the agreement does not bind the corporation. Garg claims that his employment was guaranteed by virtue of his agreement with Bala alone, and that Martin and Taggart interfered with that agreement. However, Bala, acting alone, could not guarantee Garg the CEO position, as the entire board of directors, acting as a whole, is responsible for the appointment of officers.

To protect the rights of innocent third parties, the rule that the board must act as a body is frequently disregarded where individual members have acquiesced in or ratified the informal acts of one director. 11 Ohio

Jurisprudence 3d (1979) 643-644, Business Relationships, Section 377. "The courts are reluctant to permit the corporation to take advantage of the inactivity or the informality of its board as against a third party who has dealt with the corporation in good faith and without knowledge of the informality." *Id.* at 644. However, this exception does not apply to Garg because he never claims that a promise of employment was made on behalf of the corporation; instead, he is claiming that Bala personally owed him a fiduciary duty to keep him on as CEO.

To circumvent the trial court's finding that any agreement to employ Garg would interfere with Bala's discretion as a director and therefore be void as against public policy, Garg argues that the agreement was made before he and Bala even purchased stock. Essentially, Garg maintains that Bala's discretion could not be interfered with because Bala was not even a shareholder, let alone a director, at the time. This argument, however, also defeats any contention Garg could make that he believed that Bala had any authority to bind the corporation.

As to Garg's claims based on the agreement to make the corporation public by 1993, the trial court found that such an agreement was unenforceable under the Statute of Frauds, and also against public policy. Although the trial court did not state the reasons as to why such an agreement would violate public policy, we need not address the issue, as we find Garg's claims based on this term of the joint venture agreement to be premature. Clearly, even under any type of estoppel argument that could defeat the Statute of Frauds, Bala's time for performance has not yet expired.

Finally, Garg argues that should we find that promissory estoppel does not apply, we should consider the BGA a memorandum sufficient to overcome the Statute of Frauds because it is signed by the parties to be charged and spells out many of the provisions of the joint venture agreement. Because Garg raises this issue for the first time on appeal, we decline to address it. *Seeley* v. *Rahe* (1985), 16 Ohio St. 3d 25, 26, 16 OBR 374, 375, 475 N.E. 2d 1271, 1273.

The relationship between joint venturers is fiduciary in nature. 13 Ohio Jurisprudence 3d (1979) 242, Business Relationships, Section 1101. However, because the joint venture agreement is unenforceable under the Statute of Frauds, and for the other reasons discussed above, and because promissory estoppel cannot be applied to overcome these defects, Bala cannot be held to have breached any fiduciary duty, and Martin and Taggart cannot be held liable for interference with an unenforceable agreement.

### Assignment of Error 2

"The trial court erred as a matter of law by holding appellant's removal as chief executive officer was lawful."

Under this assignment of error, Garg complains of the trial court's finding that he was an employee at will. He maintains that the real issue before the court was whether the defendants interfered with his contract right to remain as CEO.

Garg relies on *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, paragraphs two and three of the syllabus, claiming that the facts and circumstances of an oral at-will employment agreement can be considered by the trier of fact and that promissory estoppel is applicable. The trial court took note of consideration of the facts and circumstances by the trier of fact, stating:

"* * * While the court agrees that the facts and circumstances surround-

ing an oral 'employment at will' agreement can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge, the Court cannot find from the evidence that there is an oral agreement between the Company and Garg. The only agreement that Garg stands upon exists, if at all, between Garg and Venkataraman and is not binding on the Company."

Based on our discussion of the first assignment of error, we agree with the trial court's reasoning. Garg's assertion of a ten-year employment contract is based upon his agreement with Bala, and that does not bind the company.

R.C. 1701.64(B)(2) provides in part:

"(B) Unless the articles or the regulations otherwise provide, and subject to the exceptions, applicable during an emergency, as that term is defined in section 1701.01 of the Revised Code, for which provision is made in division (F) of section 1701.11 of the Revised Code:

"* * *

"(2) Any officer may be removed, with or without cause, by the directors without prejudice to the contract rights of such officer. The election or appointment of an officer for a given term, or a general provision in the articles, the regulations, or the bylaws with respect to term of office, shall not be deemed to create contract rights[.]"

Because there was no binding contract with the company, none of the defendants could be held to have interfered with such a contract. Because Garg's purported joint venture agreement with Bala is unenforceable and of no effect, as discussed previously, no damages are recoverable against Bala; as such, Martin and Taggart cannot be held to have interfered with such an agreement. Garg also alludes to the defendants' tortious interference with his rights under the BGA. The BGA contains no provision for Garg's employment, and further, all defendants were parties to that agreement. "[T]he key element of the tort of intentional interference with contractual relations is that the interference alleged must be committed by one who is not a party to the contract. * * *" *Christian* v. *Twinsburg City School Dist.* (Sept. 7, 1988), Summit App. No. 13516, unreported, at 9. Since no cause of action lies for interference with one's own contract, Garg's assertions in this respect are also without merit.

Garg's second assignment of error is overruled.

Assignment of Error 3

"The trial court erred as a matter of law by holding that the election of a new Board of Directors on May 31, 1985 was lawful even though it was contrary to the express provisions of the Buying Group Agreement."

Paragraph six of the BGA provides as follows:

"BOARD OF DIRECTORS.

"So long as all four (4) members of the buying group thier [*sic*] families own stock in the Company the board of directors shall consist of five (5) members, three (3) representing the Bala and Garg interest, and two (2) representing the Martin and Taggart interest. The initial board of directors shall consist of Martin, Bala, Garg, Shila Venkataraman wife of Bala, Roy Wade (vice president of manufacturing of the Company). * * *"

Garg contends that the election of directors on May 31, 1985, interfered with his contract rights under the BGA. Garg maintains that paragraph five of the BGA is evidence of the joint venture agreement because it requires that he and Bala acquire all shares of the company by 1993, and that paragraph six provides that until that time, he and Bala had the right, together, to elect three of the five directors.

Based on Garg's depositions and answers to interrogatories, the trial court found that paragraph six could no longer be complied with, as the interests of Garg and Bala had become divided. Because the BGA did not address this possibility, the court found that, in the absence of provisions in the articles of incorporation or code of regulations, R.C. 1701.57 governs. This statute provides that a director holds office "until the next annual meeting of the shareholders and until his successor is elected, or until his earlier resignation, removal from office or death." R.C. 1701.57(A).

Garg asserts that because of the existence of the joint venture agreement, the trial court had no basis for its finding that he and Bala no longer had a common interest. This claim is without merit. The evidence showed that relations between Garg and Bala were strained, and the BGA did not provide for this situation. As such, the trial court was correct in applying the statute to rectify the situation. This decision had no effect on paragraph five of the BGA which provided that Garg and Bala would acquire all of the shares of the corporation by 1993.

This assignment of error is overruled.

## Assignment of Error 4

"The trial court erred as a matter of law by holding that the conversion of debentures into common stock by certain shareholders of the company was lawful."

Garg maintains that the conversion of debentures into four hundred six shares of stock was the means used by the defendants to intentionally interfere with his contractual rights from the company (in his expectation of employment as CEO), the BGA, and the joint venture agreement. These claims are without merit. As discussed *supra*, Garg had no employment contract with the company. As also discussed previously, the defendants cannot be held to have interfered or conspired to interfere with the BGA as they are all parties to that agreement. Further, the joint venture agreement is unenforceable; therefore, the defendants cannot be held to have interfered or conspired to interfere with that purported agreement.

Further, even if Garg had a cause of action, the two grounds for his argument have no merit. First, he claims that paragraph one of the BGA prohibited the conversion of the debentures. This section provides in pertinent part:

"(1) PROPOSED REDEMPTION OF STOCK AND DEBENTURES.

"Shares of the company stock and debentures owned by or on behalf of the Martin and Taggart Blocks will not be tendered for redemption."

The trial court held that the term "redemption," as used above, contemplates the repurchase of debt securities for cash. Since the defendants "converted" their debentures into shares of stock, the BGA provision did not apply. We agree. By the terms of the debentures themselves, conversion of the instrument into shares is done at the option of the holder. Redemption of the shares for cash is done at the option of the corporation. See, also, 11 Ohio Jurisprudence 3d (1979) 361, Business Relationships, Section 119 (as used in R.C. 1701.23, redemption of shares of stock means repurchase at the option of the corporation).

The second point raised by Garg is that the conversion was unlawful because it violated his rights under R.C. 1701.15(A)(5) and 1701.22(C). Garg maintains that his preemptive rights were violated because, under R.C. 1701.22(C), the corporation, at the time of conversion, did not have a sufficient number of shares authorized and unissued to satisfy the conversion rights. In his affidavit attached to his

response to the motion for summary judgment, Garg stated that the corporation had authorized and issued five thousand two hundred sixty-eight shares of common stock and that all other authorized common shares had previously been redeemed and retired. In Taggart's affidavit, it was asserted that the company had twelve thousand common shares authorized and five thousand two hundred sixty-eight issued at the time of conversion.

The trial court found that based on Taggart's affidavit, twelve thousand shares were authorized and five thousand two hundred sixty-eight were issued. Garg contends that the trial court erred in granting summary judgment on this issue as a genuine issue of material fact remained as to the number of authorized shares.

We would agree, except that we do not consider the number of authorized shares or the conversion of debentures to be a material fact relevant to Garg's claims. Garg's complaint does not seek damages from the corporation for a violation of his preemptive rights. See 2 Blackford, Ohio Corporation Law and Practice (1982), Section 45.25. Instead, Garg claims that the debentures were converted in order to affect the election of directors at the shareholders' meeting and, in turn, remove him as CEO.

The defendants-appellees maintain that the debenture issue is immaterial because the additional shares issued upon conversion were inconsequential to the election results. We agree. Taggart's affidavit states that Bala's slate of directors received three thousand five hundred sixty-eight votes, while Garg's nominees received one thousand nine hundred twenty-six votes. Thus, the four hundred six shares did not decide the outcome of the election.

Garg's fourth assignment of error is not well-taken.

Assignment of Error 5

"The trial court erred as a matter of law by holding that there was no civil conspiracy among the appellees and, therefore, no tortious interference with the joint venture."

The trial court found that because there was no enforceable joint venture agreement, and therefore no tortious interference with that agreement, as a matter of law, there could be no conspiracy to remove Garg as CEO. Garg uses the same arguments under the first assignment of error to debate the grounds for the trial court's ruling. Garg further contends that the defendants formalized their conspiracy by three written agreements, and that their intent to injure him is clear when these agreements are compared with the BGA.

The three written agreements which Garg alleges to be evidence of a conspiracy to injure him economically were entered into by Bala, Martin, and Taggart. The first two were executed on May 2, 1985. One is a one-year restriction on the transfer of shares. The other is a supplemental agreement providing for (1) the addition of new shareholders, if it becomes necessary to preserve minority business status; (2) setting the buyout price of shares at $279.28; (3) employment of Martin as president until the age of sixty-five; and (4) sale to Martin of his life insurance policy owned by the corporation.

The third agreement is also a buy-sell agreement restricting the transfer of shares and setting a purchase price. This agreement was executed on December 12, 1985 and provides for termination by unanimous written agreement or in the event all of the company's shares are held by one person or entity.

These agreements cannot be considered evidence of a conspiracy to economically damage Garg. Compar-

ing them to the BGA, we do not perceive any material conflict. Paragraph five of the BGA provides that by 1993, Garg and Bala are to acquire all of the shares of the corporation. The BGA does not state, however, the proportion of shares each is to have. If Martin and Taggart transfer all of their shares to Bala by 1993, the essential terms of the BGA will be fulfilled. The other provisions of these agreements are not capable of causing Garg any economic damage.

Further, based upon our disposition of the first assignment of error, Garg's same arguments on the trial court's ruling on the conspiracy to remove him as CEO are not well-taken.

Garg's fifth assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and QUILLIN, J., concur.