OLYMPIC HOLDING COMPANY, L.L.C., ET AL., APPELLEES, *v*. ACE LIMITED ET AL.; ACE CAPITAL TITLE REINSURANCE COMPANY, APPELLANT.

[Cite as *Olympic Holding Co., L.L.C. v. ACE Ltd.,*

122 Ohio St.3d 89, 2009-Ohio-2057.]

*Statute of frauds — Promissory estoppel — Damages — The breach of a promise to sign an agreement does not remove the agreement from the signing requirement of the statute of frauds — A party may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds, which requires that an enforceable contract be in writing and signed by the party to be charged — Damages for promissory estoppel are an adequate remedy for the breach of an oral promise, absent a signed agreement — A joint-venture agreement that does not comply with the statute of frauds is unenforceable, and an unenforceable joint-venture agreement cannot impose any fiduciary duties on the parties.*

(No. 2008-0200 — Submitted December 16, 2008 — Decided May 7, 2009.)

APPEAL from the Court of Appeals for Franklin County,

No. 07AP-168, 2007-Ohio-6643.

_____

**SYLLABUS OF THE COURT**

1. The breach of an oral promise to sign an agreement does not remove the agreement from the signing requirement of the statute of frauds.

2. A party may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds, which requires that an enforceable contract must be in writing and signed by the party to be charged.

3. Damages for promissory estoppel are an adequate remedy for the breach of an oral promise, absent a signed agreement.

4. A joint-venture agreement that does not comply with the statute of frauds is unenforceable, and an unenforceable joint-venture agreement cannot impose any fiduciary duties on the parties. (*Garg v. Venkataraman* (1988), 54 Ohio App.3d 171, 561 N.E.2d 1005, approved; *Al Johnson Constr. Co. v. Kosydar* (1975), 42 Ohio St.2d 29, 71 O.O.2d 16, 325 N.E.2d 549, distinguished.)

_____

**LUNDBERG STRATTON, J.**

## I. Introduction

{¶ 1}   The primary question before the court is whether the breach of a promise to execute an agreement justifies using promissory estoppel to remove the agreement from the statute of frauds.  Ancillary to this question is whether a joint agreement can impose fiduciary duties absent compliance with the statute of frauds.  We answer both questions in the negative.  Accordingly, we reverse the judgment of the court of appeals.

## II. Facts

{¶ 2}   Appellant, ACE Capital Title Reinsurance Company ("ACE"), is a title reinsurance company located in New York.  ACE is owned by several companies located in Bermuda ("Ace Group").  Appellees Sutton Land Services, L.L.C., Title First Agency, Inc., and Title Midwest, Inc. ("title agencies") are title insurance companies located in New York, Ohio, and Kansas respectively.  Appellee Olympic Holding Company, L.L.C., a Delaware company located in Columbus, was created by the title agencies in preparation for the proposed joint agreement herein to hold the stock of Olympic Title Insurance Company ("OTIC").

**{¶ 3}** ACE approached the title agencies with a proposal to create a joint venture that would "revolutionize the title insurance industry by creating a new and unique system of title insurance and reinsurance of national scope." [1] ACE envisioned a new integrated system of title insurance and reinsurance that consisted of a residential real estate component (policy coverage up to $1,000,000) and a commercial real estate component (policy coverage over $1,000,000).

**{¶ 4}** The plan called for the title agencies to acquire OTIC, an Ohio title insurer. The title agencies would then use OTIC to underwrite title insurance policies that the title agencies issued for residential transactions. OTIC would reinsure these transactions through ACE. Meanwhile, ACE would issue title insurance policies for commercial transactions. OTIC would reinsure these transactions up to $100,000; ACE would provide the balance of the reinsurance.

**{¶ 5}** Before the plan could be implemented, the title agencies had to acquire OTIC, and the acquisition required approval by the Ohio Department of Insurance. Additionally, ACE would have to apply with the Ohio Department of Insurance to sell direct title insurance.

**{¶ 6}** In early 2003, the parties began negotiating by exchanging draft "term sheets" in an attempt to reach a consensus on the "general business terms" of the agreement. Each page of the term sheet contained the following disclaimer: "NOT AN OFFER OF INSURANCE."

**{¶ 7}** In March 2003, the title agencies, through Sutton Land Services, initiated the acquisition of OTIC by sending OTIC a letter of intent to acquire. Thereafter, Sutton and the other two title agencies formed Olympic Holding

---

1. "Title insurance" is "[a]n agreement to indemnify against loss arising from a defect in title to real property." Black's Law Dictionary (8th Ed.2004) 819. Reinsurance is "[i]nsurance of all or part of one insurer's risk by a second insurer, who accepts the risk in exchange for a percentage of the original premium." Id. at 1312.

Company, L.L.C. (referred to collectively as the "Olympic Group"), for the purpose of acquiring OTIC.

{¶ 8} From August 2003 through November 2003, ACE and the Olympic Group exchanged nine drafts of a proposed reinsurance agreement. The reinsurance agreement sought to define the obligations of the parties (ACE and OTIC) regarding issuing and underwriting direct title insurance and reinsurance for residential real estate deals. Each of these drafts contained contract-disclaimer language that provided:

{¶ 9} "*This document is intended for discussion purposes only. Neither this document nor any other statement* (oral or otherwise) made at any time in connection herewith *is an offer*, invitation or recommendation *to enter into any transaction*. Any offer would be made at a later date and subject to contract, satisfactory documentation and market conditions." (Emphasis added.)

{¶ 10} Each draft also provided:

{¶ 11} "This Agreement may be executed in any number of counterparts, and by the parties on separate counterparts, but *will not be effective until each party has executed at least one counterpart*." (Emphasis added.)

{¶ 12} Each draft also referred to a "Capital Support Agreement." On October 8, 2003, ACE circulated an initial draft of the capital-support agreement, which required the Olympic Group to maintain a minimum amount of capital for OTIC.

{¶ 13} Finally, each draft of the reinsurance agreement also required OTIC to enter into agreements with an agency that would write title-insurance policies for residential transactions, subject to ACE's approval. On November 13, 2003, ACE circulated an "initial draft" of the "Model Agency Agreement" to Olympic Group. However, no agency agreement was ever executed by the parties.

**{¶ 14}** A commercial reinsurance agreement was discussed by the parties, but none was ever completed.

**{¶ 15}** On November 10, 2003, ACE submitted its application to the Ohio Department of Insurance to become licensed to sell title insurance.

**{¶ 16}** On November 6, 2003, the Olympic Group submitted its application to the Ohio Department of Insurance seeking approval to acquire OTIC. In support of its application, the Olympic Group attached an August 2003 draft of the residential reinsurance agreement. The draft was not executed. It had no contract-disclaimer language or capital-support provision.

**{¶ 17}** On December 2, 2003, the Ace Group announced a $1 billion initial public offering ("IPO"). ACE assured the Olympic Group that the IPO would not endanger the joint agreement and in fact could help it.

**{¶ 18}** After obtaining approval from the Ohio Department of Insurance, the Olympic Group closed on the acquisition of OTIC on December 29, 2003. That same week, ACE's chief operating officer became aware that ACE would not go forward with the joint agreement. On January 2, 2004, ACE informed the Olympic Group that ACE would probably be spun off and that it was unlikely to proceed with the proposed reinsurance agreement.

**{¶ 19}** The day after learning of ACE's cancellation, the Olympic Group signed and sent its own draft of the residential reinsurance agreement to ACE for signature. ACE refused to execute the agreement.

**{¶ 20}** In January 2004, the Olympic Group filed a multicount complaint against ACE and the Ace Group. The trial court dismissed the Bermuda-based Ace Group for lack of personal jurisdiction, and the Olympic Group then voluntarily dismissed the complaint.

**{¶ 21}** In 2006, the Olympic Group refiled the complaint against ACE and Ace Group. The trial court again dismissed the Ace Group. The complaint alleged ten causes of action, including breach of a joint-venture agreement, breach

of fiduciary duty, promissory estoppel, negligent misrepresentation, tortious interference with a contractual relationship, tortious interference with a business relationship, and fraud. The title agencies sought specific performance of the joint-venture agreement and damages, including punitive damages.

{¶ 22} ACE filed a motion for summary judgment claiming that the agreement did not comply with the statute of frauds, R.C. 1335.05. The Olympic Group argued that promissory estoppel removed the agreements from the statute of frauds.

{¶ 23} The trial court held that promissory estoppel did not remove this agreement from the statute of frauds, and therefore, the Olympic Group could not use promissory estoppel to bar ACE from asserting the statute of frauds as an affirmative defense to Olympic Group's breach-of-contract claims. Because the trial court could find no agreement that complied with the statute of frauds, it granted summary judgment in favor of ACE as to specific performance and on Olympic Group's breach-of-contract, breach-of-fiduciary-duty, and negligent-misrepresentation claims. However, the court held that the Olympic Group's claim of promissory estoppel, seeking detrimental-reliance damages, survived summary judgment, as did its claims for tortious interference with contractual and business relationships.

{¶ 24} On appeal, the court of appeals dismissed Olympic Group's assignments of error pertaining to promissory estoppel and fraud for lack of a final, appealable order. *Olympic Holding Co. v. ACE Ltd.*, Franklin App. No. 07AP-168, 2007-Ohio-6643, ¶ 62. After examining Olympic Group's remaining assignments of error, the court of appeals affirmed the trial court's judgment in part and reversed it in part. Id. at ¶ 102.

{¶ 25} The court of appeals reversed the trial court's summary judgment in favor of ACE on the Olympic Group's breach-of-contract claim and breach-of-fiduciary-duty claim. *Olympic Holding Co.*, 2007-Ohio-6643, ¶ 103. With regard

6

to the contract claims, the court of appeals held that there were genuine issues of material fact as to whether the parties had reached an agreement and that ACE had promised that it would execute the agreement after the Olympic Group acquired OTIC. Id. at ¶ 11. The court, determining that ACE had never intended to go through with its promise, further held that "[u]nder these circumstances, it is appropriate to allow appellants to assert the equitable doctrine of promissory estoppel," and therefore, ACE "should be equitably estopped from using the affirmative defense of the statute of frauds because of a misrepresentation to supply signed written memoranda of the parties' agreements." Id. at ¶ 48.

{¶ 26} In reversing the judgment in favor of ACE regarding Olympic Group's claim for breach of fiduciary duty, the court of appeals held that a joint venture can be express or implied, and therefore, " 'joint venturers may incur fiduciary obligations to each other regardless of whether any written agreement is then in force, since such a writing is not necessary for the creation of such a venture.' " *Olympic Holding Co*., 2007-Ohio-6643, ¶ 54, quoting *Doctors Hosp. v. Hazelbaker* (1995), 106 Ohio App.3d 305, 309-310, 665 N.E.2d 1175. Relying on testimony from ACE pertaining to the nature of its relationship with the Olympic Group, the court determined that there was at least a genuine issue of material fact as to whether there was a fiduciary duty between the parties. Id. at ¶ 55.

{¶ 27} The court of appeals otherwise affirmed the trial court's judgment or found Olympic Group's remaining assignments of error moot. Id. at ¶ 103.

{¶ 28} This cause is before this court upon our acceptance of ACE's discretionary appeal. *Olympic Holding Co., L.L.C. v. ACE Ltd*., 117 Ohio St.3d 1496, 2008-Ohio-2028, 885 N.E.2d 954.

### III. Analysis

*A. The Breach of a Promise to Sign an Agreement Does Not Justify Using Promissory Estoppel to Remove the Agreement from the Statute of Frauds*

{¶ 29} We begin by examining whether breaching a promise to execute an agreement equitably removes the agreement from the statute of frauds. We recognize that numerous jurisdictions have held that under various circumstances, promissory estoppel may be used to remove an agreement from having to comply with the statute of frauds. See Annotation, Promissory Estoppel as Basis for Avoidance of Statute of Frauds (1974), 56 A.L.R.3d 1037, 1974 WL 35112. However, we decline to adopt that exception under the circumstances of this case because it is both unnecessary and damaging to the protections afforded by the statute of frauds.

{¶ 30} R.C. 1335.05, Ohio's codification of the statute of frauds, provides:

{¶ 31} "No action shall be brought whereby to charge * * * a person upon an agreement * * * that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in *writing* and *signed* by the party to be charged therewith * * *." (Emphasis added.)

{¶ 32} Agreements that do not comply with the statute of frauds are unenforceable. *Hummel v. Hummel* (1938), 133 Ohio St. 520, 11 O.O. 221, 14 N.E.2d 923, paragraph one of the syllabus. See also *Shepherd v. Westlake* (1991), 76 Ohio App.3d 3, 10, 600 N.E.2d 1095; *DeCavitch v. Thomas Steel Strip Corp.* (1990), 66 Ohio App.3d 568, 572, 585 N.E.2d 879.

{¶ 33} The purpose of the statute of frauds is to prevent "frauds and perjuries." *Wilber v. Paine* (1824), 1 Ohio 251, 255. The statute does so by informing the public and judges of what is needed to form a contract and by encouraging parties to follow these requirements by nullifying those agreements that do not comply. "[T]he statute of frauds is supposed both to make people take notice of the legal consequences of a writing and to reduce the occasions on which judges enforce non-existent contracts because of perjured evidence."

Kennedy, Form and Substance in Private Law Adjudication (1976), 89 Harv.L.Rev. 1685, 1691. "In every case, the formality means that unless the parties adopt the prescribed mode of manifesting their wishes, they will be ignored. The reason for ignoring them, for applying the sanction of nullity, is to force them to be self conscious and to express themselves clearly * * *." Id. at 1692.

{¶ 34} Courts have long recognized that a signed contract constitutes a party's final expression of its agreement. See *Fillinger Constr. Inc. v. Coon* (Sept. 28, 1993), Greene App. No. 93-CA-0002, 1993 WL 386320, *3 ("contract signed by Coon constituted the *final* expression of the agreement of the parties" [emphasis added]); *Breed, Elliott & Harrison v. Lima* (1920), 12 Ohio App. 485, 1920 WL 711, *3, quoting *Bunday v. Huntington* (C.A.8, 1915), 224 F. 847, 853 (executed contract " 'is presumed to express the *final* agreement of the parties' " [emphasis added]). Thus, the statute of frauds is necessary because a "signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs." *Seale v. Citizens S. & L. Assn.* (C.A.6, 1986), 806 F.2d 99, 104.

{¶ 35} If promissory estoppel is used as a bar to the writing requirements imposed by the statute of frauds, based on a party's oral promise to execute the agreement, the predictability that the statute of frauds brings to contract formation would be eroded. Parties negotiating a contract would no longer know what signifies a final agreement. Promissory estoppel used this way would open contract negotiations to fraud, the very evil that the statute of frauds seeks to prevent. Thus, "[t]o allow [a] plaintiff to recover on a theory of promissory estoppel where the oral contract is precluded by the Statute of Frauds, ' "would abrogate the purpose and intent of the legislature in enacting the statute of frauds and would nullify its fundamental requirements." ' " *Essco Geometric, Inc. v. Harvard Industries, Inc.* (Sept. 30, 1993), E.D.Mo. No. 90-1354C(6), 1993 WL

766952, *3, quoting *Sales Serv. v. Daewoo Internatl. (Am.)* (Mo.App.1989), 770 S.W.2d 453, 457, quoting *Morsinkhoff v. Deluxe Laundry & Dry Cleaning Co.* (Mo.App.1961), 344 S.W.2d 639, 644. See also *Kahn v. Cecelia Co.*, (D.C.N.Y.1941), 40 F.Supp. 878, 880, quoting *Deutsch v. Textile Waste Merchandising Co.* (1925), 212 A.D. 681, 685, 209 N.Y.S. 388 (declining to enforce an oral agreement because enforcing a promise that the defendant would reduce the agreement to writing would result in the " 'practical nullification of the statute of frauds' ").

{¶ 36} We decline to recognize an exception to the statute of frauds even when the promise to execute an agreement is fraudulent or misleading. If a party establishes that a promise to execute an agreement is misleading or fraudulent, promissory estoppel is an equitable remedy available to recover reliance damages.

{¶ 37} As recognized by the Supreme Court of Utah, "[i]n most instances of negotiations for transactions included within the Statute [of Frauds], a reduction of the contract to writing is contemplated and, in all probability, the parties will discuss who will draw the instrument and when and where it will be signed." *Easton v. Wycoff* (1956), 4 Utah 2d 386, 388-389, 295 P.2d 332. However, until parties execute the agreement, " '[r]eliance on a statement of future intent made prior to the conclusion of negotiations in a complex business transaction is unreasonable as a matter of law. * * * Such a rule is particularly appropriate when two sophisticated business entities are involved in negotiations. "Until the documents are signed and delivered the game is not over. Businessmen would be undesirably inhibited in their dealings if expressions of intent and the exchange of drafts were taken as legally binding agreements." ' " *Carcorp, Inc. v. Chesrown Oldsmobile-GMC Truck, Inc.,* Franklin App. No. 06AP-329, 2007-Ohio-380, ¶ 20, quoting *Continental Fin. Servs. Co. v. First Natl. Boston Corp.* (Aug. 30, 1984), D.Mass. No. CA-82-1505-T, at 9-10, quoting *Tull v. Mister Donut Dev. Corp.* (1979), 7 Mass.App. 626, 632, 389 N.E.2d 447.

**{¶ 38}** Accordingly, we hold that a party may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds, which requires that an enforceable contract be in writing and signed by the party to be charged, but may pursue promissory estoppel as a separate remedy for damages.

*B. Promissory Estoppel as an Action for Damages Provides an Adequate Remedy for Detrimental Reliance on a Breached Promise*

**{¶ 39}** An action for damages under promissory estoppel provides an adequate remedy for an unfulfilled or fraudulent promise. "The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." *Doe v. Univision Television Group, Inc.* (Fla.App.1998), 717 So.2d 63, 65, citing Restatement of the Law 2d, Contracts (1981) Section 90; see also *Cohen v. Cowles Media Co.* (Minn.1992), 479 N.W.2d 387, 389. We adopted promissory estoppel through the Restatement of the Law 2d, Contracts (1973), Section 90 in *Talley v. Teamsters, Chauffeurs, Warehousemen, & Helpers, Local No. 377* (1976), 48 Ohio St.2d 142, 146, 2 O.O.3d 297, 357 N.E.2d 44. "To be successful on a claim of promissory estoppel, '[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading.' " *Shampton v. Springboro,* 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶ 34, quoting *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, citing *Heckler v. Community Health Serv.* (1984), 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42.

**{¶ 40}** Thus, promissory estoppel is an adequate remedy for a fraudulent oral promise or breach of an oral promise, absent a signed agreement. See *Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 142, 555 N.E.2d 280 (promissory

estoppel is an "equitable doctrine designed to prevent the harm resulting from the reasonable and detrimental reliance of [the promisee] upon the *false* representations of [the promisor]" [emphasis added]).

*C. A Joint Venture Agreement that Does Not Comply with the Statute of Frauds Cannot Impose Fiduciary Duties*

**{¶ 41}** Next, we examine whether a joint-venture agreement that does not comply with the statute of frauds can impose fiduciary duties upon the parties.

**{¶ 42}** The court of appeals below, quoting *Doctors Hosp. v. Hazelbaker* (1995), 106 Ohio App.3d 305, 310-311, 665 N.E.2d 1175, held, " ' [J]oint venturers may incur fiduciary obligations to each other regardless of whether any written agreement is then in force, since such a writing is not necessary for the creation of such a venture.' "

**{¶ 43}** *Hazelbaker* relied on *Al Johnson Constr. Co. v. Kosydar* (1975), 42 Ohio St.2d 29, 71 O.O.2d 16, 325 N.E.2d 549, paragraph one of the syllabus, for the proposition that a joint venture may be implied. In *Al Johnson,* a signed agreement was not at issue. The facts involved parties who had entered into a joint venture for construction and had *completed* the construction. Id. at 30. The dispute was whether the joint venture or the individual venturers should pay the tax imposed on the project. Id. at 31. The parties in *Al Johnson* actively engaged in and completed the joint venture, as opposed to merely promising to enter an agreement. Full performance removed the agreement in *Al Johnson* from the statute of frauds. See *Rutledge v. Hoffman* (1947), 81 Ohio App. 85, 36 O.O. 405, 75 N.E.2d 608, paragraph five of the syllabus.

**{¶ 44}** In *Hazelbaker*, the parties *did* enter into several *signed* agreements. While the Tenth District Court of Appeals, relying on *Al Johnson,* asserted that the parties, a medical corporation and a nursing-home developer, formed a joint venture before signing the agreement, the court ironically held that the joint-venture oral agreements did not obligate one party to proceed at all with the

project at that stage, as there was no obligation on the part of the medical center to continue with the joint venture. *Hazelbaker*, 106 Ohio App.3d at 312, 665 N.E.2d 1175. The court of appeals stated: "Doctors was, at that time, free to forgo participation in the retirement center project at all, so Hazelbaker could not assert a firm expectation to the $4.5 million in credit enhancements which Doctors was to provide, *if* it was to participate in the retirement center project." (Emphasis sic.) Id. at 311.

{¶ 45} In this case, the dispute over what constituted a joint venture or what the parties' obligations were before the contracts were even signed demonstrates the policy reasons that underlie the statute of frauds. We reject *Hazelbaker*'s application of *Al Johnson*.

{¶ 46} In *Garg v. Venkataraman* (1988), 54 Ohio App.3d 171, 172-173, 561 N.E.2d 1005, the court stated, "While joint venture agreements may be oral, they are, nonetheless, still contracts, and thus subject to all of the applicable requirements of contract law, including the Statute of Frauds." Thus, *Garg* held that if a joint-venture agreement does not comply with the statute of frauds, it is unenforceable and cannot impose any fiduciary duties upon the parties. Id. at 172. We agree with *Garg* and therefore hold that a joint-venture agreement that does not comply with the statute of frauds is unenforceable, and an unenforceable joint-venture agreement cannot impose any fiduciary duties on the parties.

*D. The Statute of Frauds Applies to the Proposed Joint Agreement*

{¶ 47} In the court of appeals, two of Olympic Group's assignments of error asserted that the trial court erred in granting summary judgment on plaintiff's contract claims (1) because the parties' agreements were capable of performance in one year and thus fell outside the statute of frauds and (2) because there were signed writings chargeable against ACE defendants that satisfy the statute of frauds. Based on its reversal of the trial court's judgment on other grounds, the court of appeals overruled these two assignments of error as being

moot. In the interest of judicial economy, we now resolve these assignments of error.

{¶ 48} The statute of frauds applies to agreements that cannot be performed within a year. R.C. 1335.05. When parties to an alleged agreement did *not* intend the agreement to be performed in less than a year, the statute of frauds renders that agreement unenforceable. *Pro Arts Inc. v. K Mart Corp.* (N.D.Ohio 1984), 580 F.Supp. 1073, 1075; see also *Lingo v. Ohio Cent. RR.,* Franklin App. No. 05AP-206, 2006-Ohio-2268, ¶ 44, 47.

{¶ 49} In the instant case, the parties envisioned that the proposed joint agreement would last five years. Therefore, the proposed joint-venture agreement in the instant case comes within the statute of frauds.

{¶ 50} With regard to Olympic Group's assertion that the requisite writings exist, we find nothing in the record of a *final* agreement that satisfies the statute of frauds. The draft term sheets exchanged by the parties in an attempt to negotiate a joint-venture agreement all contained contract-disclaimer language, and none were signed by ACE. There is no commercial reinsurance agreement. And there is no signed residential reinsurance agreement. Finally, there is no written joint-venture agreement. There are simply no documents that sufficiently satisfy the writings required by the statute of frauds.

## IV. Conclusion

{¶ 51} We hold that the breach of an oral promise to sign an agreement does not remove an agreement from the signing requirement of the statute of frauds. Consequently, a party may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds, which requires that an enforceable contract must be in writing and signed by the party to be charged.

{¶ 52} Because there are no documents that comply with the statute of frauds, the proposed joint agreement for insurance and reinsurance is

unenforceable. And because the joint agreement is not enforceable, it imposes no fiduciary duties on the parties. Finally, Olympic Group has a promissory estoppel claim for reliance damages pending in the trial court, which is an adequate remedy to recover damages it sustained in detrimentally relying upon ACE's allegedly false promise.

{¶ 53} Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings not inconsistent with this opinion.

Judgment reversed
and cause remanded.

MOYER, C.J., and O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

{¶ 54} I respectfully dissent. In my view, today's holding leads to an unjust result and will adversely affect business in Ohio, much of which involves complex transactions that must of necessity be taken on a step-by-step and handshake basis. This court should instead join the majority position among jurisdictions that have considered this issue, embrace the view espoused by legal scholars, and hold that the equitable doctrine of promissory estoppel may preclude assertion of a statute-of-frauds defense.

### *The Statute of Frauds*

{¶ 55} This court has long held that an agreement subject to the statute of frauds, now codified at R.C. 1335.05, is not enforceable unless it has been properly memorialized. See *Heaton v. Eldridge & Higgins* (1897), 56 Ohio St. 87, 101, 46 N.E. 638; *Hummel v. Hummel* (1938), 133 Ohio St. 520, 523-524, 11 O.O. 221, 14 N.E.2d 923. And as stated in *Stickney v. Tullis-Vermillion,* 165 Ohio App.3d 480, 2006-Ohio-842, 847 N.E.2d 29, ¶ 22, "[t]he statute of frauds is

essentially an evidentiary rule the purpose of which is to protect the integrity of certain enumerated contractual transactions. The statute requires that these transactions be in writing or accompanied by a memorandum witnessing the transaction."

### *Promissory Estoppel and the Statute of Frauds*

{¶ 56} Ohio has adopted the view of promissory estoppel expressed in Restatement of the Law 2d, Contracts (1993), Section 90. See *Talley v. Teamsters, Chauffeurs, Warehousemen, & Helpers, Local No. 377* (1976), 48 Ohio St.2d 142, 146, 2 O.O.3d 297, 357 N.E.2d 44. That section states: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

{¶ 57} Importantly, the doctrine of promissory estoppel has two distinct functions in the law of contracts. First, it may be asserted offensively as a separate, equitable cause of action. See, e.g., *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 23. Second, as the Alabama Supreme Court stated in *Mazer v. Jackson Ins. Agency* (Ala.1976), 340 So.2d 770, 772, promissory estoppel may be asserted defensively, as it "prevent[s] a party from asserting rights under a general technical rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience."

{¶ 58} This case concerns the latter function, and in fact, one of our earliest decisions, *Wilber v. Paine* (1824), 1 Ohio 251, 255, establishes that equity may bar application of Ohio's statute of frauds. We explained, "The great object of the statute [of frauds] is clearly expressed in the title prefixed to it. It is for the prevention of frauds and perjuries. It is not, therefore, to be presumed that it was intended, in any instance, to encourage fraud, and we may infer that any construction which would have a certain tendency to do so, would counteract the

design of the legislature, by advancing the mischief intended to be prevented." Id. Thus, we stated, "we can not forbear to enforce the contract [that was not in writing], without sanctioning a fraud on the plaintiff." Id. at 256. See also *LaBounty v. Brumback* (1933), 126 Ohio St. 96, 100-101, 184 N.E. 5. And in *Hodges v. Ettinger* (1934), 127 Ohio St. 460, 466, 189 N.E. 113, we emphasized that "the statute of frauds cannot be permitted to legalize a fraud it was intended to suppress. *It cannot be made a shield and protection for injustice*." (Emphasis added.)

{¶ 59} Ohio precedent in this regard is consistent with the position of legal scholars, who have uniformly recognized that it may be appropriate in some instances to bar a party from asserting that a contract is unenforceable due to the statute of frauds. For example, Corbin states, "It is understandable that courts are reluctant to thwart what is perceived as statutory policy, *but it should be remembered that the statute of frauds' application has been circumscribed by its purpose and subjected to equitable judicial limitation whenever appropriate since its inception*." (Emphasis added.) 4 Corbin on Contracts (1997) 43, Section 12.8, citing Costigan, The Date and Authorship of the Statute of Frauds (1913), 26 Harv.L.Rev. 329, 344. As the treatise further emphasizes, "The older view that the statute of frauds is impervious to the challenge of promissory estoppel has been correctly criticized." Id. at fn. 28.

{¶ 60} Similarly, Professors Calamari and Perillo assert, "The doctrine of estoppel, promissory or otherwise, is as much a part of our law as the Statute of Frauds." Calamari & Perillo, The Law of Contracts (4th Ed.1998) 776. And 10 Lord, Williston on Contracts (4th Ed.1999) 146-148, Section 27:16, explains that estoppel "is called into operation to defeat what would be an unconscionable use of the Statute, and guards against the utilization of the Statute as a means for defrauding innocent persons who have been induced or permitted to change their position in reliance upon oral agreements within its operation."

**{¶ 61}** Although the analyses differ in some respects, an overwhelming majority of jurisdictions recognize that promissory estoppel may bar a party from asserting a defense under the statute of frauds in certain circumstances. See, e.g., *Reeves v. Alyeska Pipeline Serv. Co.* (Alaska 1996), 926 P.2d 1130, 1139; *Johnson v. Gilbert* (App.1980), 127 Ariz. 410, 414, 621 P.2d 916; *Ralston Purina Co. v. McCollum* (App.1981), 271 Ark. 840, 843-844, 611 S.W.2d 201; *Monarco v. Lo Greco* (1950), 35 Cal.2d 621, 623-624, 220 P.2d 737; *Kiely v. St. Germain* (Colo.1983), 670 P.2d 764, 767; *McIntosh v. Murphy* (1970), 52 Hawaii 29, 36, 469 P.2d 177; *Warder & Lee Elevator, Inc. v. Britten* (Iowa 1979), 274 N.W.2d 339, 342-343; *Decatur Coop. Assn. v. Urban* (1976), 219 Kan. 171, 178-180, 547 P.2d 323; *Snyder v. Snyder* (1989), 79 Md.App. 448, 459, 558 A.2d 412; *Andrews v. Charon* (1935), 289 Mass. 1, 6, 193 N.E. 737; *McMath v. Ford Motor Co.* (1977), 77 Mich.App. 721, 725-726, 259 N.W.2d 140; *Norwest Bank Minn., N.A. v. Midwestern Mach. Co.* (Minn.App.1992), 481 N.W.2d 875, 880; *Sanders v. Dantzler* (Miss.1979), 375 So.2d 774, 776; *Trad Industries, Ltd. v. Brogan* (1991), 246 Mont. 439, 446, 805 P.2d 54; *Alpark Distrib., Inc. v. Poole* (1979), 95 Nev. 605, 607-608, 600 P.2d 229; *Kubin v. Miller* (S.D.N.Y.1992), 801 F. Supp. 1101, 1112 (New York law); *Allen M. Campbell Co., Gen. Contrs., Inc. v. Virginia Metal Industries, Inc.* (C.A.4, 1983), 708 F.2d 930, 933-934 (North Carolina law); *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.* (1993), 87 Ohio App.3d 613, 623-624, 622 N.E.2d 1093 (Eighth District); *Potter v. Hatter Farms, Inc.* (1982)*,* 56 Or.App. 254, 260, 641 P.2d 628; *Atlantic Wholesale Co., Inc. v. Solondz* (App.1984), 283 S.C. 36, 40-41, 320 S.E.2d 720; *Shaw v. George* (1966), 82 S.D. 62, 67, 141 N.W.2d 405; *D & S Coal Co., Inc. v. USX Corp.* (E.D.Tenn.1988), 678 F.Supp. 1318, 1323 (Tennessee law); *Nagle v. Nagle* (Tex.1982), 633 S.W.2d 796, 800; *In re Estate of Nelson* (1975), 85 Wash.2d 602, 610-611, 537 P.2d 765; *Everett v. Brown* (1984), 174 W.Va. 35, 38-39, 321 S.E.2d 685; *U.S. Oil Co., Inc. v. Midwest Auto Care Servs.,*

*Inc.* (App.1989), 150 Wis.2d 80, 89, 440 N.W.2d 825; *Remilong v. Crolla* (Wyo.1978), 576 P.2d 461, 465.

{¶ 62} In contrast, only a few jurisdictions hold that promissory estoppel does not preclude assertion of a defense pursuant to the statute of frauds. See, e.g., *Tanenbaum v. Biscayne Osteopathic Hosp., Inc.* (Fla.1966), 190 So.2d 777, 779; *Bridges v. Reliance Trust Co.* (1992), 205 Ga.App. 400, 402, 422 S.E.2d 277; *Dickens v. Quincy College Corp.* (1993), 245 Ill.App.3d 1055, 1058, 615 N.E.2d 381; *Fields v. R.S.C.D.B., Inc.* (Mo.App.1993), 865 S.W.2d 877, 878; *Farmland Serv. Coop, Inc. v. Klein* (1976), 196 Neb. 538, 544, 244 N.W.2d 86; *Atlantic Paper Box Co. v. Whitman's Chocolates* (E.D.Pa.1994), 844 F.Supp. 1038, 1043, fn. 7; *Heyman v. Adeack Realty Co.* (1967), 102 R.I. 105, 108, 228 A.2d 578; *Ravarino v. Price* (1953), 123 Utah 559, 568, 260 P.2d 570.

{¶ 63} In accord with our own precedent, and in view of the position of legal scholars and the majority of our sister states, this court should hold that promissory estoppel may bar application of the statute of frauds.

{¶ 64} The appellate court in the instant case followed the decision of the Eighth District Court of Appeals in *McCarthy, Lebit, Crystal & Haiman Co.*, L.P.A., 87 Ohio App.3d at 627, 622 N.E.2d 1093, which held that "the doctrine of promissory estoppel may be used to preclude a defense of statute of frauds, but only when there has been (1) a misrepresentation that the statute's requirements have been complied with or (2) a promise to make a memorandum of the agreement." *Olympic Holding Co.*, 2007-Ohio-6643, ¶ 37. See also *Gilbert*, 127 Ariz. at 414, 621 P.2d 916; *Tiffany Inc. v. W.M.K. Transit Mix, Inc.* (1972), 16 Ariz.App. 415, 419, 493 P.2d 1220; *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement Sys.* (C.A.5, 1970), 432 F.2d 64, 66; *"Moore" Burger, Inc. v. Phillips Petroleum Co.* (Tex.1972), 492 S.W.2d 934, 938. This approach, it seems to me, strikes a reasonable balance between the equitable considerations of promissory estoppel set forth in Section 90 of the Restatement Second of

Contracts, which we have already adopted, and the statute of frauds' purpose of maintaining the integrity and certainty of certain types of contracts.

{¶ 65} The facts in the instant case demonstrate the injustice of permitting ACE to assert that the agreement it had with Olympic is unenforceable for lack of a writing pursuant to the statute of frauds. The record here demonstrates that executives for Olympic and ACE reached a mutual understanding on the essential terms of their joint business venture. Richard Reese, the chief operating officer of ACE, assured Olympic that ACE would sign the agreement as soon as Olympic closed on its acquisition of the local title insurance companies. The record further reveals that Reese told Olympic that their agreement was "just awaiting signature" by ACE's board of directors, implying not only that the agreement had been, or would be, reduced to writing, but also that the term sheets exchanged by the parties substantially reflected their mutual understanding.

{¶ 66} The court of appeals properly determined that genuine issues of material fact exist in this case with respect to whether Olympic and ACE had reached a mutual understanding on the material terms of their agreement and whether Olympic reasonably and detrimentally relied upon ACE's promise that their agreement had been written and executed upon Olympic's acquisition of the Ohio title agency.

{¶ 67} Accordingly, I would affirm the judgment of the court of appeals with respect to the issue of using promissory estoppel as a defense to the statute of frauds when a party has induced reliance on a broken promise. See *Wilber*, 1 Ohio at 256.

PFEIFER, J., concurs in the foregoing opinion.

_____

Carpenter, Lipps, & Leland, L.L.P., Michael H. Carpenter, Jeffrey A. Lipps, and Katheryn M. Lloyd, for appellee.

Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford, James D. Curphey, Jay A. Yurkiw, and L. Bradfield Hughes; and Wollmuth, Maher & Deutsch, L.L.P., Fredrick R. Kessler, and William A. Maher, for appellant.

Bricker & Eckler, L.L.P., Kurtis A. Tunnell, Anne Marie Sferra, and Vladimair P. Belo, urging reversal for amici curiae, Ohio Manufacturers Association and Ohio Chemistry Technology Counsel.

_____